# EXHIBIT "A"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | |
|---|---|
| ORLANDA DEL CARMEN PEÑA ARITA,§<br>Individually, as Next Friend of D.M.A. and  §<br>C.M.A., and Representative of the Estate of  §<br>MARCO ANTONIO MUÑOZ,                    §<br>     Plaintiffs,                            §<br>                       §<br>v.                                      §<br>                       §<br>UNITED STATES OF AMERICA,               §<br>ALVARO A. GUAJARDO-MARTINEZ,            §<br>CHRISTOPHER R. GARZA, ABRAM             §<br>LERMA, JORGE FLORES,                    §<br>UNKNOWN UNITED STATES                   §<br>CUSTOMS AND BORDER PROTECTION§<br>AGENTS, THE COUNTY OF STARR,            §<br>TEXAS, RENE "ORTA" FUENTES,             §<br>HECTOR LOPEZ III, CRECENCIO             §<br>GALVAN, SAMMY MARROQUIN,                §<br>EVELARIO GARZA, JOSE GALVAN III,  §<br>RAUL GARCIA, CLYDE GUERRA,              §<br>JAVIER VELA, ALEX GARCIA,               §<br>AND UNKNOWN                             §<br>STARR COUNTY DETENTION                  §<br>OFFICERS,                               §<br>     Defendants.                            § | CIVIL ACTION NO. 7:19-cv-288 |

---

## SECOND AMENDED COMPLAINT

---

Plaintiff, ORLANDA DEL CARMEN PEÑA ARITA brings this complaint on her own

behalf, as Next Friend of her children D.M.A. and C.M.A., and on behalf of her deceased husband,

Marco Antonio Muñoz, for violations of Mr. Muñoz's civil rights against the UNITED STATES

OF AMERICA, ALVARO A. GUAJARDO, in his individual capacity , CHRISTOPHER R.

GARZA in his individual capacity, JORGE FLORES, in his individual capacity and ABRAM

LERMA, in his individual capacity, requesting relief under the United States Constitution, the

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2672, and against the COUNTY
OF STARR, TEXAS, RENE "ORTA" FUENTES, in his official capacity as Starr County Sheriff,
HECTOR LOPEZ III, in his individual capacity and official capacity as an employee of the
COUNTY OF STARR, TEXAS, CRECENCIO GALVAN, in his individual capacity and official
capacity as an employee of the COUNTY OF STARR, TEXAS, SAMMY MARROQUIN, in his
individual capacity and official capacity as an employee of the COUNTY OF STARR, TEXAS,
EVELARIO ISSAC GARZA in his individual capacity and official capacity as an employee of the
COUNTY OF STARR, TEXAS, JOSE GALVAN III, in his individual capacity and official
capacity as an employee of the COUNTY OF STARR, TEXAS, RAUL GARCIA, in his individual
capacity and official capacity as an employee of the COUNTY OF STARR, TEXAS, CLYDE
GUERRA, in his individual capacity and official capacity as an employee of the COUNTY OF
STARR, TEXAS, JAVIER VELA, in his individual capacity and official capacity as an employee
of the COUNTY OF STARR, TEXAS, ALEX GARCIA, in his individual capacity and official
capacity as an employee of the COUNTY OF STARR, TEXAS, and unknown COUNTY OF
STARR, TEXAS employees in their individual and official capacities, under 42 U.S.C. § 1983 and
the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA").

## BACKGROUND

1.      Marco Antonio Muñoz (hereinafter "Mr. Muñoz") died a horrible and preventable death
as a result of being forcibly separated from his family by federal agents.

2.      Plaintiff Orlanda del Carmen Peña Arita (hereinafter "Plaintiff" or "Ms. Peña") brings this
action on her own behalf, on behalf of her children, and on behalf of the Estate of Mr. Muñoz,
having suffered through the callous and cruel effects of the federal government's Zero Tolerance

and family separation policies. Before the nation's attention was fixed on the horrors of family separations in South Texas, the Zero Tolerance policy was already being used as a weapon against families seeking refuge in the United States when Ms. Peña and her family arrived in South Texas in May 2018.

3.      The unnecessary infliction of mental and emotional violence upon immigrant and asylum-seeking families through forced separation has caused trauma that will last long after families leave the custody of the United States Government. The decision to intentionally separate Mr. Muñoz from Plaintiff and their child, D.M.A., caused all three to suffer unimaginable emotional harm. Due to the acts and omissions of Defendants, these memories of pain and sorrow will be Plaintiff and D.M.A.'s final memories of Mr. Muñoz.

4.      The wrongful acts and omissions of United States Customs and Border Protection ("CBP") agents following their apprehension of Mr. Muñoz caused him extraordinary mental anguish that led to his death, alone in a cell in the Starr County Jail. The CBP agents responsible for his death acted within the scope of their office or employment under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the laws of the State of Texas. *See* 28 U.S.C. § 1346(b).

5.      The wrongful acts and omissions of the Starr County Defendants after receiving custody of a distraught Mr. Muñoz from CBP agents also  led to his death. Starr County employees failed to accommodate Mr. Muñoz's disability, and to provide him with proper housing and monitoring, in violation of his federal constitutional rights and in contravention of his rights under the ADA and RA.

6.      As alleged with greater specificity below, Mr. Muñoz died as a result of the negligent actions and omissions, and/or intentional, knowing or reckless acts, of agents of Customs and

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

Border Protection, an agency of the Defendant United States of America, and detention officers of the Starr County Sheriff's Office, a part of the County of Starr, Texas.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the Constitution and laws of the United States. This Court has jurisdiction to grant relief in this action pursuant to 28 U.S.C. § 1346(b), as Plaintiff brings claims under the Federal Tort Claims Act.

8.      Venue is proper in the Southern District of Texas under 28 U.S.C. § 1402(b) because the events giving rise to these claims occurred in this judicial district.

9.      Plaintiff timely filed an administrative complaint with CBP related to the death of her husband, Mr. Muñoz, in November 2018.

10.     By letter dated February 19, 2019, CBP denied Plaintiff's administrative claim. In the denial notification, CBP advised Plaintiff that if she disagreed with the denial, she had the right to file suit in federal district court "no later than six months after the date of mailing this notification."

11.     This instant suit is timely filed under the FTCA, 28 U.S.C. § 2401(b), as it is being filed within six months of the date of the mailing of the denial of the administrative claim.

## JURY DEMAND

12.     Plaintiff hereby demands that all eligible claims be tried to a jury.

## PARTIES

13.     Plaintiff Orlanda del Carmen Peña Arita is a natural person and a national of Honduras residing in the United States. She is the widow of the decedent, Mr. Muñoz, and a representative of his Estate in this action.

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

14.     Plaintiff D.M.A. is a four-year-old minor child and a national of Honduras residing in the United States. He is the child of Plaintiff Orlanda del Carmen Peña Arita and Mr. Muñoz. Plaintiff Orlanda del Carmen Peña Arita sues as Next Friend of D.M.A.

15.     Plaintiff C.M.A. is a nine-year-old minor child and a national of the United States, residing in the United States. He is the child of Plaintiff Orlanda del Carmen Peña Arita and Mr. Muñoz. Plaintiff Orlanda del Carmen Peña Arita sues as Next Friend of C.M.A.

16.     Defendant United States of America is the sovereign nation responsible for the lawful enforcement of immigration laws through, among others, officers, agents, and employees of the Department of Homeland Security and its component agency, Customs and Border Protection.

17.     Defendant Alvaro A. Guajardo is an individual who was employed by Defendant United States of America as a Customs and Border Protection officer at all relevant times. He is sued in his individual capacity.

18.     Defendant Christopher R. Garza is an individual who was employed by Defendant United States of America as a Customs and Border Protection officer at all relevant times. He is sued in his individual capacity.

19.     Defendant Jorge Flores is an individual who was employed by Defendant United States of America as a Customs and Border Protection officer at all relevant times. He is sued in his individual capacity.

20.     Defendant Abram Lerma is an individual who was employed by Defendant United States of America as a Customs and Border Protection officer at all relevant times. He is sued in his individual capacity.

21.     Unknown United States Customs and Border Protection Agents were individuals employed as border patrol agents of the Defendant United States of America at all times relevant to this complaint. They are sued in their individual capacities.

22.     Defendant County of Starr, Texas is a local government and political subdivision of the State of Texas. At all relevant times, the County of Starr, Texas has received federal funds, including through the Department of Homeland Security to house Customs and Border Protection detainees.

23.     Defendant Rene "Orta" Fuentes is the duly elected Starr County Sheriff, and served in this position at all relevant times. He is sued in his official capacities.

24.     Defendant Hector Lopez III is an individual who was employed by Defendant County of Starr, Texas as a detention officer at the Starr County Jail at all relevant times. He is sued in his individual and official capacities.

25.     Defendant Crecencio Galvan is an individual who was employed by Defendant County of Starr, Texas as a detention officer at the Starr County Jail at all relevant times. He is sued in his individual and official capacities.

26.     Defendant Sammy Marroquin is an individual who was employed by Defendant County of Starr, Texas as a detention officer at the Starr County Jail at all relevant times. He is sued in his individual and official capacities.

27.     Defendant Evelario Issac Garza is an individual who was employed by Defendant County of Starr, Texas as a detention officer at the Starr County Jail at all relevant times. He is sued in his individual and official capacities.

28.     Defendant Jose Galvan III is an individual who was employed by Defendant County of Starr, Texas as a detention officer at the Starr County Jail at all relevant times. He is sued in his individual and official capacities.

29.     Defendant Raul Garcia is an individual who was employed by Defendant County of Starr, Texas as a detention officer at the Starr County Jail at all relevant times. He is sued in his individual and official capacities.

30.     Defendant Clyde Guerra is an individual who was employed by Defendant County of Starr, Texas as a detention officer at the Starr County Jail at all relevant times. He is sued in his individual and official capacities.

31.     Defendant Javier Vela is an individual who was employed by Defendant County of Starr, Texas as a detention officer at the Starr County Jail at all relevant times. He is sued in his individual and official capacities.

32.     Defendant Alex Garcia is an individual who was employed by Defendant County of Starr, Texas as a detention officer at the Starr County Jail at all relevant times. He is sued in his individual and official capacities.

33.     Unknown Starr County Detention Officers were individuals employed as detention officers at the Starr County Jail, at all relevant times. They are sued in their individual and official capacities.

## STATEMENT OF FACTS

### The Zero Tolerance Policy

34.     On April 6, 2018, then-United States Attorney General Jeff Sessions issued a memorandum to "Federal Prosecutors Along the Southwest Border" directing each United States Attorney's

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

Office along the Southwest Border to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under the United States Code for illegal entry into the United States. This policy is known as the "Zero Tolerance" policy.

35.     The Zero Tolerance policy adopted by the Department of Justice calls for the Department of Homeland Security to refer one-hundred percent of unlawful Southwest Border crossings to the Department of Justice for prosecution.

36.     On April 23, 2018, the Department of Homeland Security adopted a policy of "pursu[ing] prosecution of all amenable adults who cross [United States'] border[s] illegally, including presenting with a family unit, between ports of entry" in coordination with the Department of Justice.

37.     On May 7, 2018, then-Attorney General Jeff Sessions delivered remarks in San Diego, California, announcing the Zero Tolerance policy and stating that if any foreign national crossed the border with a child, "that child will be separated from you, probably, as required by law. If you don't want your child to be separated, then don't bring him across the border illegally."

38.     The intent of enacting such policies was to deter future migration by subjecting individuals detained by CBP agents to harsh treatment likely to cause severe trauma, in order to make examples of them.

39.     After the enactment of these policies by the Department of Homeland Security and the Department of Justice, and at all times relevant to this action, CBP agents did not have discretion in referring individuals who crossed the United States-Mexico border unlawfully for criminal prosecution.

40.     CBP agents were aware of this requirement for "Zero Tolerance" prosecutions, and the intent behind such policies, when, on or about May 11, 2018, Plaintiff, D.M.A., and Mr. Muñoz crossed the border from Mexico into the United States near Granjeno, Texas.

### *Detention and Separation of Mr. Muñoz from his Family*

41.     Mr. Muñoz and his wife, Orlanda del Carmen Peña Arita, are Honduras citizens. The couple had lived in the United States for a time, having a child together in the United States. A growing family, they returned to Honduras to fulfill Mr. Muñoz's dream of owning and operating a coffee farm. After Mr. Muñoz's brother-in-law was murdered in circumstances that suggested the crime was politically motivated, Mr. Muñoz and his wife feared for their lives and were forced to flee their coffee farm in 2018, traveling about one month to return to their former home in the United States.

42.     Shortly after the family crossed, they encountered CBP agents, including Defendant Abram Lerma. Upon being detained, Plaintiff and Mr. Muñoz requested medical aid for Mr. Muñoz due to blisters on his feet.

42.     Defendant Lerma and other CBP agents who encountered the family did not provide Mr. Muñoz with medical assistance, despite Plaintiff's request to do so.

43.     Defendant Lerma and other CBP agents transported Plaintiff, Mr. Muñoz, and D.M.A. together to the McAllen Central Processing Center in McAllen, Texas.

44.     While at the McAllen Central Processing Center, at some point on or about May 11, 2018, CBP agents forcibly separated Mr. Muñoz from Plaintiff and D.M.A.

45.     CBP agents were furthering the intent of the government's Zero Tolerance policies when they separated Mr. Muñoz from his family, acting with particular cruelty, emboldened by said policy.

46.      CBP agents refused to provide medical assistance to Mr. Muñoz at any time during his time in the McAllen Central Processing Center, despite the fact that Plaintiff and Mr. Muñoz requested medical aid.

47.      On May 12, 2018, agents briefly reunited Mr. Muñoz with his family for the purposes of interviewing and fingerprinting.

48.      CBP agents then again separated Mr. Muñoz from his son, D.M.A.

49.      Thereafter, Mr. Muñoz became visibly distraught and erratic due to the stress of this separation.

50.      CBP agents notified Mr. Muñoz that he would be subject to criminal prosecution for illegal entry into the United States.

51.      Mr. Muñoz became increasingly distraught and mentally unstable due to being separated from his family.

52.      In response to Mr. Muñoz's evident and acute anguish, CBP agents briefly allowed Mr. Muñoz to see Plaintiff and D.M.A. again.

53.      An unknown CBP agent told Plaintiff that Mr. Muñoz was unstable.

54.      In response, Plaintiff again requested that CBP agents provide Mr. Muñoz with medical attention.

55.      After only a few minutes, however, CBP agents once again separated Mr. Muñoz from Plaintiff and D.M.A., despite Mr. Muñoz's obvious and visible emotional distress, in furtherance of the objectives of the Zero Tolerance policy.

56.      When Mr. Muñoz embraced D.M.A., only three years old at the time, Mr. Muñoz once again became increasingly and visibly distraught, and appeared to suffer the physical and emotional manifestations of a panic attack.

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

57.     Plaintiff again raised concerns regarding Mr. Muñoz's health to CBP agents present.

58.     Despite their awareness of Mr. Muñoz's obvious and apparent severe emotional distress, CBP agents followed through with their determination to separate him from his family, physically and forcibly prying the boy from Mr. Muñoz's arms. This caused Mr. Muñoz to become even more emotional and unstable.

59.     Plaintiff and D.M.A. watched, horrified, as CBP agents dragged Mr. Muñoz away from them, while Mr. Muñoz yelled and screamed in desperation.

60.     After Mr. Muñoz was separated once again from his family, he became more erratic, visibly distressed, and aggressive towards agents.

61.     CBP agents placed Mr. Muñoz alone in a chain-link fenced cage located inside the McAllen Processing Center. Mr. Muñoz began to shake and kick at the cage. Mr. Muñoz's visible distress continued into the evening of May 12, 2018.

62.     Sometime that same evening, while Mr. Muñoz was still reeling from being separated from his family, CBP agents, including Defendant Jorge Flores--purportedly concerned that Mr. Muñoz would injure himself or others--transported him to the Starr County Jail.

63.     Defendant Jorge Flores was aware that Mr. Muñoz had been separated from his family. Furthermore, an unknown CBP agent or other employee for Defendant United States of America informed Defendant Flores that Mr. Muñoz had allegedly "faked" a seizure.

64.     The Starr County Jail is approximately 40 miles from the McAllen Central Processing Center.

65.     CBP agents, including Defendants Jorge Flores and Alvaro Guajardo-Martinez, did not transport Mr. Muñoz to a hospital or other medical facility or otherwise provide him with medical

or psychiatric care despite his clearly urgent and unstable condition, including the allegation that Mr. Muñoz had possibly suffered a seizure prior to being transported.

66.    Once inside the transport vehicle, Mr. Muñoz continued to scream and kick at the windows. Mr. Muñoz's behavior was so erratic that CBP agents, including Defendants Jorge Flores and Alvaro Guajardo-Martinez, were forced to pull over on the side of the highway, return to the McAllen Central Processing Center to place Mr. Muñoz in a different vehicle, and recruit several additional CBP agents, including Defendant Christopher Garza, to aid them in transporting Mr. Muñoz.

67.    On more than one occasion during both the first attempted trip and second completed trip to the Starr County Jail, Mr. Muñoz expressed to agents, including Defendants Jorge Flores, Alvaro Guajardo-Martinez, and Christopher Garza, his belief that CBP agents had, or were going to, murder his family, and that they were transporting him to the Starr County Jail so that he could also be killed.

68.    On the drive to the Starr County Jail, it was, or should have been, evident to CBP agents, including Defendants Jorge Flores, Alvaro Guajardo-Martinez, and Christopher Garza, that Mr. Muñoz was in need of psychiatric and medical care.

69.    CBP agents, including Defendants Jorge Flores, Alvaro Guajardo-Martinez, and Christopher Garza had an opportunity to transport Mr. Muñoz to a medical facility to obtain psychiatric and any other necessary medical treatment, but failed to do so.

### Detention at Starr County Jail

70.    When CBP agents arrived at the Starr County Jail with Mr. Muñoz, Starr County detention officers, including Defendants Hector Lopez III, Crecencio Galvan, and Clyde Guerra, took physical custody of Mr. Muñoz. He was still visibly agitated and erratic.

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

71.     At that time, CBP agents, including Defendant Jorge Flores, advised Starr County Jail officers, including Defendants Hector Lopez III and Raul Garcia, that Mr. Muñoz had supposedly "faked" a seizure, and that Mr. Muñoz had told CBP agents that Starr County officers wanted to kill him.

72.     CBP agents did advise, or should have advised, Starr County detention officers of the fact that Mr. Muñoz was in distress because they had separated Mr. Muñoz from his family.

73.     Starr County detention officers, including Defendants Hector Lopez III, Crecencio Galvan, and Clyde Guerra took custody of Mr. Muñoz and booked him into the jail.

74.     Shortly after arriving at the Starr County Jail, Mr. Muñoz got into a physical altercation with detention officers, Defendants Hector Lopez III and Crecencio Galvan. This was due at least in part to Mr. Muñoz's continued emotional distress.

75.     Following this altercation, and having observed Mr. Muñoz's overall unstable and distressed state, Starr County detention officers knew or should have known that Mr. Muñoz posed a danger to himself or others.

76.     Upon booking Mr. Muñoz into the jail, Starr County detention officers placed Mr. Muñoz in a padded cell.

77.     The cell where Mr. Muñoz was placed was equipped with a camera.

78.     Starr County detention officers permitted Mr. Muñoz to keep an article of clothing with long sleeves.

79.     Starr County detention officers knew that Mr. Muñoz was suffering from mental distress, but did not seek psychiatric care for Mr. Muñoz.

80.     The Texas Commission on Jail Standards is an agency of the State of Texas charged with overseeing County Jail standards and conditions throughout the State of Texas.

81.    Regulations of the Texas Commission on Jail Standards require that face-to-face interaction be had every thirty minutes with individuals who are "known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior." *See*, 37 TAC § 275.1.

82.    Texas Commission on Jail Standards regulations represent a minimum standard that may not be appropriate in circumstances where, as in Mr. Muñoz's, more frequent supervision is needed.

83.    Upon booking him, Starr County officers knew that Mr. Muñoz was assaultive, potentially suicidal, mentally ill, and/or had demonstrated bizarre behavior.

84.    During the evening of May 12, 2018 and morning of May 13, 2018, Starr County officers failed to have face-to-face interactions with Mr. Muñoz at an interval appropriate to prevent his death,  let alone at the bare minimum 30 minute intervals required under the Texas Commission on Jail Standards. 86.  Starr County officers additionally falsified their observation rounds in the Starr County jail observation log to hide their failure to adequately conduct these face-to-face interactions.

85.    Around 9 a.m. on the the morning of May 13, 2018, Mr. Muñoz took a long-sleeved article of clothing, and knelt down on the floor next to a drainage grate in the cell.

86.    Mr. Muñoz tied one end of the article of clothing to the drainage grate, making a noose with the other end.

87.    Mr. Muñoz then slipped the noose around his neck, and laid down in the middle of the cell.

88.    Mr. Muñoz proceeded to turn his body around the drain, like the hands of a clock,, resulting in the tightening of the noose around his neck.

89.     Mr. Muñoz continued in this manner, allowing the noose to constrict his airway, until he finally asphyxiated and died. This process took a substantial amount of time, during which Mr. Muñoz paused several times before continuing to tighten the noose.

90.     This sequence of events was captured on the live-feed from the camera in Mr. Muñoz's cell. Despite this, Mr. Muñoz's body was not found until around 10 a.m.

91.     Defendants Jose Galvan III, Javier Vela, Sammy Marroquin, Alex Garcia, and Evelario Garza were aware that, as a part of their job duties, they were required to perform regular, and at minimal face-to-face checks every thirty minutes on Mr. Muñoz, and failed to do so.

92.     Mr. Muñoz died because Starr County officials failed to take away the article of clothing, failed to provide him a safe cell, and failed and/or refused to observe and supervise him adequately.

93.     Mr. Muñoz's wife and minor children have been harmed by having their next of kin die a horrible and preventable death. Plaintiff and her children have suffered emotional pain, torment, and suffering due to Mr. Muñoz's death.

## CAUSES OF ACTION

### First Cause of Action: Federal Tort Claims Act - 28 U.S.C. § 1346(b)

#### *Intentional Infliction of Emotional Distress*

#### (Against the United States of America)

94.     Plaintiff re-alleges and incorporates by reference paragraphs 34 – 93 above.

95.     CBP agents acted within the scope of their office or employment under circumstances where the United States, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Texas. *See*, 28 U.S.C. § 1346(b).

96.     Under Texas law, intentional infliction of emotional distress exists where (1) a defendant acts intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) a defendant's actions caused the emotional distress, and (4) the emotional distress plaintiff suffered was extreme. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). "Severe emotional distress is distress that is so severe that no reasonable person could be expected to endure it." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999).

97.     CBP agents, including Defendants Jorge Flores and Christopher Garza knowingly, intentionally, and/or recklessly caused Mr. Muñoz and Plaintiff severe emotional distress by separating Mr. Muñoz from Plaintiff and D.M.A.

98.     CBP agents took these actions in furtherance of the Zero Tolerance policy enacted by Defendant United States of America, which policy was to intentionally separate parents from children in order to inflict extreme emotional distress, so that they would serve as examples to other potential asylum seekers who would be deterred from taking similar action after observing such suffering.

99.     CBP agents' conduct of separating Mr. Muñoz from his wife and young son in a foreign country and in the custody of a foreign law enforcement agency was extreme and outrageous. CBP agents' continued decision to briefly reunite Mr. Muñoz with his family, allegedly allowing him to embrace his son, only to forcibly remove the boy from his arms while he became visibly distressed, was extreme and outrageous conduct that no person should be expected to endure.

100.    CBP agents' knowing or reckless conduct caused Mr. Muñoz to suffer extreme emotional distress that continued for an extended period of time.

101.    The emotional distress caused by CBP agents' actions was severe and contributed to his death.

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

102.    CBP agents' forced separation of Plaintiff and D.M.A. from Mr. Muñoz on multiple occasions, including being forced to watch agents drag their family member away, caused both Plaintiff and D.M.A. to suffer severe emotional distress.

103.    C.M.A. suffered severe emotional distress after being advised that his father suffered such a violent and emotionally distraught final day alive.

104.    The harm suffered by Plaintiff and D.M.A. due to CBP agents' actions was severe, and will in all likelihood continue into the future.

105.    CBP agents' actions constitute intentional infliction of emotional distress under Texas law.

106.    Plaintiff is entitled to actual and compensatory damages individually, as a representative of Mr. Muñoz's Estate, and as next friend of D.M.A and C.M.A.

## Second Cause of Action: Federal Tort Claims Act - 28 U.S.C. § 1346(b)

### *Negligence*

### (*Against the United States of America*)

107.    Plaintiff re-alleges and incorporates by reference paragraphs 34 – 93 above.

108.    CBP agents acted within the scope of their office or employment under circumstances where the Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Texas. *See*, 28 U.S.C. § 1346(b).

109.    Under Texas law, a claim for negligence requires that a (1) defendant owed the plaintiff a legal duty, (2) defendant breached that duty, and (3) defendant's breach proximately caused damages to the plaintiff. *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017).

110.    Defendants United States of America, and CBP agents, including Defendants Jorge Flores and Christopher Garza, owed a legal duty of care to Mr. Muñoz as a detainee in their custody.

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

111.    CBP officers, including Defendants Jorge Flores and Christopher Garza, breached the duty they owed to Mr. Muñoz when they failed to provide him with appropriate medical care, including, but not limited to, in the form of psychiatric treatment after CBP officers caused his disturbed mental state by separating him from his wife and son.

112.    CBP agents' failure to provide Mr. Muñoz with medical care in these circumstances proximately caused Mr. Muñoz's injuries and death.

113.    Defendant is liable for the negligent acts of CBP employees acting on its behalf.

114.    The actions of Defendant constitute negligence under Texas law.

115.    Plaintiff is entitled to actual and compensatory damages individually, as a representative of Mr. Muñoz's Estate, and as next friend of D.M.A and C.M.A.

## Third Cause of Action: Federal Tort Claims Act - 28 U.S.C. § 1346(b)

### *Gross Negligence*

### (Against the United States of America)

116.    Plaintiff re-alleges and incorporates by reference paragraphs 34 – 93 above.

117.    Named and Unknown CBP agents acted within the scope of their office or employment under circumstances where Defendant United States of America, if it were a private person, would be liable to Plaintiff in accordance with the laws of the State of Texas. *See* 28 U.S.C. § 1346(b).

118.    Under Texas law, gross negligence involves two components: "(1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001) (internal citations omitted).

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

119.    Defendant United States of America's actions involved an extreme degree of risk. CBP agents recognized the mental and emotional stress their actions placed on Mr. Muñoz.

120.    Following the agents' initial separation of the family, Mr. Muñoz became extremely distraught, including his kicking and shaking the cage in which he was located. As such, agents were objectively and subjectively aware that their actions posed an extreme risk of harm.

121.    Despite knowing this, agents continued with their decision to intentionally separate Mr. Muñoz from his family.

122.    Mr. Muñoz's injuries and death were caused by the grossly negligent or wrongful acts or omissions of CBP agents when they separated him from his family and failed to provide him with adequate medical treatment.

123.    Through their grossly negligent actions, CBP agents violated their duty to provide Mr. Muñoz with medical attention, which resulted in Mr. Muñoz becoming distraught and taking his own life.

124.    The gross negligence of CBP agents caused Mr. Muñoz's injuries and death. Defendant is liable for the grossly negligent acts of CBP agents acting on its behalf.

125.    The actions of Defendant constitute gross negligence under Texas law.

126.    Plaintiff is entitled to actual and compensatory damages individually, as a representative of Mr. Muñoz's Estate, and as next friend of D.M.A and C.M.A.

### Fourth Cause of Action: *Bivens*

### (Against All Named and Unknown Customs and Border Protection Agents in their Individual Capacities)

127.    Plaintiff re-alleges and incorporates by reference paragraphs 34 – 93 above.

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

128.     To recover damages for a federal agent's violation of their constitutional rights, a plaintiff must establish a (1) constitutional violation (2) by individual federal defendants acting under color of federal law or authority. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

129.     All Named and Unknown CBP agents, by separating him from his family and, despite his becoming significantly emotionally distraught as a result of the separation, failing to provide him with medical attention, violated Mr. Muñoz's right under the Fifth Amendment of the United States Constitution to be free from the deprivation of life and liberty without due process of law.

130.     All Named and Unknown CBP agents were acting within the scope of their authority as federal law enforcement agents when they violated Mr. Muñoz's constitutional rights.

131.     Plaintiff is entitled to actual, compensatory, and punitive damages as a result of these CBP agents' violations of Mr. Muñoz's constitutional rights individually, as a representative of Mr. Muñoz's Estate, and as next friend of D.M.A and C.M.A.

### Fifth Cause of Action: 42 U.S.C. § 1983

**(Against the County of Starr, Texas; the Starr County Sheriff in his Official Capacity; and All Other Named and Unknown County of Starr Employees in their Individual and Official Capacities)**

132.     Plaintiff re-alleges and incorporates by reference paragraphs 34 – 93 above.

133.     Plaintiff is entitled to relief under 42 U.S.C. § 1983, which establishes a cause of action where (1) a person acting under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia (2) subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

134.    Both individual State actors and local government units are "persons" under 42 U.S.C. §

1983 and both may be held liable for violating a plaintiff's constitutional rights. To establish a

local government unit's liability for a constitutional violation, "a plaintiff must identify: (1) an

official policy (or custom), of which (2) a policymaker can be charged with actual or constructive

knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle*

*v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (citation and internal quotation marks

omitted).

135.    Mr. Muñoz was a pretrial detainee. As such, he was entitled to medical care and safety

under the due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d

633, 639 (5th Cir. 1996) (en banc).

136.    It is a violation of a pretrial detainee's due process right to medical care or protection from

suicide if detention officers act or fail to act with subjective deliberate indifference to the detainee's

rights. *Id.* at 636.

137.    All Named and Unknown Starr County detention officers were aware that Mr. Muñoz was

suffering from mental distress that made him a danger to himself or others. Despite this, Starr

County detention officers (i) did not seek medical attention for him; (ii) placed him in a cell with

an item of clothing that he could use to kill himself; and (iii) did not monitor him adequately given

the circumstances, and at a minimum, in accordance with State regulations.

138.    All Named and Unknown Starr County detention officers' actions in failing to provide him

with medical care and safety rise to the level of deliberate indifference to his safety in these

circumstances, including conducting fewer, irregular observations than required and altering the

observation logs.

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

139.     Defendant County of Starr, Texas, had, or has, a custom of failing to adequately monitor inmates at risk of self-harm, including in contravention of binding regulations promulgated by the Texas Commission on Jail Standards.

140.     Starr County was deliberately indifferent to, and allowed to continue, the persistent, widespread custom of inadequately monitoring and providing care to detainees. Starr County failed to supervise, investigate, or discipline officers for fostering a high-risk environment for suicide, such as monitoring detainees at irregular intervals and routinely altering the monitoring logs.

141.     Starr County Sheriff, Rene "Orta" Fuentes, is responsible for setting policy and directing customs at the Starr County Jail. Sheriff Fuentes had actual or constructive knowledge that the Starr County Jail was not adequately monitoring detainees and failing to provide a suicide-safe environment.

142.     All Named and Unknown Starr County detention officers' failure to monitor Mr. Muñoz in accordance with the Starr County Jail's custom of failing to adequately supervise inmates, and ignoring basic regulations regarding the supervision of inmates was the moving force behind detention officers' violation of Mr. Muñoz's constitutional rights.

143.     All Named and Unknown Starr County detention officers were acting under the color of law as State law enforcement officers when they failed to provide him with medical care and safety, in contravention of Mr. Muñoz's Constitutional rights.

### Sixth Cause of Action: 42 U.S.C. § 12132 and 29 U.S.C. § 701 et seq.

### *Americans with Disabilities Act and the Rehabilitation Act*

### (Against the County of Starr, Texas)

144.     Plaintiff re-alleges and incorporates by reference paragraphs 34 – 93 above.

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

145.     The ADA prohibits discrimination by public entities. To establish such discrimination, a plaintiff must allege: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.

146.     The Rehabilitation Act and the ADA are judged under the same legal standard. Jurisprudence interpreting one is generally applicable to the other and the statutes share the same definitions and claims.

147.     Mr. Muñoz was a qualified person with a disability. The mental trauma Mr. Muñoz suffered as a result of the emotional and physical distress caused by CBP agents' violent separation of him from his family constituted a mental impairment that substantially limited his abilities to think, separate reality from paranoia, communicate, and care for himself. Mr. Muñoz' mental impairment therefore qualified as a disability under the ADA and the Rehabilitation Act.

148.     Mr. Muñoz was "otherwise qualified" to participate in the benefits, programs, and activities related to his removal and detention. Because Mr. Muñoz suffered from a qualifying disability under the ADA and Rehabilitation Act, the County of Starr, Texas and Starr County detention officers had a responsibility to provide safe confinement, including safe housing and adequate monitoring.

149.     As a local government, the County of Starr, Texas, including its component the Starr County Sheriff's Office, constitutes a public entity. 42 U.S.C. § 12131(1)(A-B).

150.     The County of Star, Texas receives financial assistance from the federal government, including to operate "programs or activities" to detain immigrants, such as safe housing and proper care for immigrants. 29 U.S.C. § 794(b)(1)(A).

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

151.    All Named and Unknown officers were acting within the scope of their employment with the County of Starr, Texas when it was open, obvious, and apparent to all Named and Unknown Starr County detention officers that Mr. Muñoz was suffering from a mental impairment during his time in their custody.

152.    Despite being aware of his disability and the need to provide a safe physical environment with regular officer observation, all Named and Unknown Starr County detention officers failed to take reasonable steps to accommodate Mr. Muñoz's disability, such as by restricting his access to the drain to which he tied his clothing, monitoring him via the camera in his cell, or conducting face-to-face observation more frequently.

153.    As a result of the discrimination, Mr. Mr. Muñoz was denied the benefits of safe housing and medical care. The reasonable accommodations necessary for Mr. Muñoz's disability would not have been unduly burdensome or a fundamental alteration in the program. 150.     Defendant County of Starr, Texas's failure to take these reasonable steps to accommodate Mr. Muñoz's open, obvious, and apparent limitations constituted intentional discrimination on the basis of his disability under the ADA and the Rehabilitation Act.

154.    Plaintiff is entitled to actual, compensatory, and punitive damages due to Defendant County of Starr, Texas's violation of Mr. Muñoz's rights under the ADA and the Rehabilitation Act.

### PRAYER FOR RELIEF

155.    Plaintiff therefore respectfully requests a judgment against Defendants for:

> (a) actual and compensatory damages arising from the negligence and/or intentional, knowing, or reckless actions of Defendant United States of America's employees and agents in violation of the FTCA, resulting in Mr. Muñoz's death;
>
> (b) actual, compensatory, and punitive damages arising from Defendants, all Named and Unknown CBP Agents' and Defendants Named and Unknown Starr

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

County jail officials' deliberate indifference to the risk of suicide posed by Mr. Muñoz, in violation of his constitutional rights under the Fifth Amendment, resulting in Mr. Muñoz's death;

(c) actual and compensatory damages arising from Defendant Starr County's policy or custom of failing to adequately monitor inmates at risk of self-harm, resulting in Mr. Muñoz's death;

(d) actual, compensatory, and punitive damages arising from Defendant County of Starr, Texas's for failing to reasonably accommodate Mr. Muñoz's disability, resulting in Mr. Muñoz's death;

(e) actual and compensatory damages for funeral, burial, and other costs pertaining to Mr. Muñoz's death;

(f) reasonable and necessary attorneys' fees and costs; and

(g) any such other relief as this Court deems just and proper.

Dated: October 2, 2019

Respectfully Submitted,

Texas Civil Rights Project

*/s/Erin D. Thorn*

Efrén C. Olivares
Attorney-in-Charge for Plaintiff
State Bar No. 24065844
SDTX Bar No. 1015826
efren@texascivilrightsproject.org
Erin Thorn Vela
State Bar No. 24093261
SDTX Bar No. 2744303
erin@texascivilrightsproject.org
Zachary Dolling
State Bar No. 24105809

*Orlanda del Carmen Peña Arita v. USA & County of Starr, Texas, et. al.* – Second Amended Complaint

SDTX Bar No. 3290949
zachary@texascivilrightsproject.org
Ricardo Garza
State Bar No. 24109912
SDTX Bar No. 3336127
ricky@texascivilrightsproject.org
1017 W. Hackberry Ave.
Alamo, Texas 78516
Tel: (956) 787-8171 ext. 125

John Escamilla*
State Bar no. 00793699
Escamilla Law Firm PLLC
john@escamillalawfirm.com
1021 Martin Ave.
McAllen, Texas 78504
Tel: (956) 618-4999
Fax: (888) 635-4715
*Pro hac vice

THE VARGAS LAW OFFICE
Daniel E. Vargas
State Bar No. 24072403
Federal ID No. 1286250
220 South 12th. Ave., Suite A
Edinburg, Texas 78539
Ph: (956) 287-3743
Fx: (956) 287-3992
Em: thevargaslawoffice@gmail.com
Attorneys for Plaintiff
Orlanda del Carmen Peña Arita

## CERTIFICATE OF SERVICE

I, Erin D. Thorn, hereby certify that a copy of the foregoing Second Amended Complaint will be timely served on all Defendants in accordance with the Federal Rules of Civil Procedure.


*/s/Erin D. Thorn*
Erin D. Thorn