United States District Court
Southern District of Texas
**ENTERED**
June 30, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ORLANDA DEL CARMEN PEÑA ARITA, individually and as next friend of D.M.A. and C.M.A. and as representative of the ESTATE OF MARCO ANTONIO MUÑOZ, | § § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 7:19-cv-00288 |
| UNITED STATES OF AMERICA; ALVARO A. GUAJARDO-MARTINEZ, in individual capacity; CHRISTOPHER R. GARZA, in individual capacity; ABRAM LERMA, in individual capacity; JORGE FLORES, in individual capacity; UNKNOWN UNITED STATES CUSTOMS AND BORDER PROTECTION AGENTS; COUNTY OF STARR, TEXAS; RENE "ORTA" FUENTES, in official capacity; HECTOR LOPEZ III, in official and individual capacity; CRECENCIO GALVAN, in official and individual capacity; EVELARIO GARZA, in official and individual capacity; CLYDE GUERRA, in official and individual capacity; ALEX GARCIA, in official and individual capacity; SAMMY MARROQUIN, in official and individual capacity; RAUL GARCIA, in official and individual capacity; and UNKNOWN STARR COUNTY DETENTION OFFICERS, | § § § § § § § § § § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## OPINION AND ORDER

The Court now considers 29 briefs: "Defendant United States of America's Motion to Dismiss All Claims in Plaintiffs' Second Amended Complaint Against Defendant United States of America;"[1] Plaintiffs' response;[2] and the United States' reply;[3] the "Individual Federal Defendants' Motion to Dismiss" filed on behalf of Border Patrol Defendants Alvaro A. Guajardo-Martinez, Christopher R. Garza, Abram Lerma, and Jorge Flores;[4] Plaintiffs' response;[5] and Border Patrol agents' reply[6] and supplemental authority;[7] the seriatim motions to dismiss filed by Starr County and the Starr County Sheriff and Starr County Jail employees;[8] Plaintiffs' responses;[9] and Defendants Sammy Marroquin's and Raul Garcia's reply;[10] the "Opposed Motion to Stay Discovery and Disclosure" filed on behalf of Defendants Starr County, Rene "Orta" Fuentes, Hector Lopez, Evelario Garza, Crecencio Galvan, Clyde Guerra, and Alex Garcia;[11] Plaintiffs' response;[12] and Border Patrol Defendants' opposition to discovery;[13] and "Plaintiff's [sic] Motion for Leave to File Third Amended Complaint,"[14] Defendants' responses;[15] Plaintiffs' reply;[16] Plaintiffs' supplemental "Advisory to the Court" of supporting facts,[17] and certain Defendants' response to the advisory.[18] In summary, Defendants move to

---

[1] Dkt. No. 99.
[2] Dkt. No. 116.
[3] Dkt. No. 121.
[4] Dkt. No. 124.
[5] Dkt. No. 133.
[6] Dkt. No. 136.
[7] Dkt. No. 140.
[8] Dkt. Nos. 125–131, 142–143.
[9] Dkt. Nos. 134, 146.
[10] Dkt. No. 150. No other reply brief was filed on behalf of Starr County, the Starr County sheriff, or the Starr County Jail employees. This brief also addresses the "Opposed Motion to Stay Discovery and Disclosure."
[11] Dkt. No. 132.
[12] Dkt. No. 135.
[13] Dkt. No. 139.
[14] Dkt. No. 144.
[15] Dkt. Nos. 145, 148–149.
[16] Dkt. No. 152.
[17] Dkt. No. 153.

dismiss the operative Second Amended Complaint, Defendants move to stay discovery, and Plaintiffs want to file a Third Amended Complaint which Defendants oppose. After considering the motions, record, and relevant authorities, the Court **GRANTS** all motions to dismiss, **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion to amend and **DENIES AS MOOT** the motion to stay discovery.

## I.   BACKGROUND AND PROCEDURAL HISTORY

This is a civil rights lawsuit arising out of a jail suicide on May 13, 2018.[19] This case commenced with an original complaint on August 18, 2019.[20] Plaintiffs amended as a matter of course on September 4, 2019, to add Defendants.[21] Plaintiffs sought further leave to amend to cure admitted defects in the First Amended Complaint on October 2, 2019, before any Defendant had filed a responsive pleading, which this Court granted on October 10th.[22] Plaintiffs' "Second Amended Complaint" is therefore the live pleading,[23] and the Court will draw all background facts as alleged from that complaint.

This case arises from the tragic suicide of Marco Antonio Muñoz while he was detained at the Starr County Jail. In April 2018, then-United States Attorney General Jeff Sessions implemented zero tolerance and family separation policies for individuals detained under suspicion of committing an illegal entry offense[24] at the United States' southwestern international land border.[25] Around April and May 2018, husband and wife Marco Antonio Muñoz and Plaintiff Orlanda del Carmen Peña Arita and their 3-year-old son D.M.A. left their

---

[18] Dkt. No. 154.
[19] *See* Dkt. No. 61 at 16, ¶ 85.
[20] Dkt. No. 1.
[21] Dkt. No. 16; FED. R. CIV. P. 15(a)(1).
[22] Dkt. No. 60.
[23] *Id.* at 3.
[24] *See* 8 U.S.C. § 1325.
[25] Dkt. No. 61 at 10–11, ¶¶ 34–37. *See* Memorandum for Federal Prosecutors Along the Southwest Border (Apr. 6, 2018), https://www.justice.gov/opa/press-release/file/1049751/download.

coffee farm in Honduras, after circumstances indicated that Mr. Muñoz's brother-in-law was killed for political reasons. The family traveled to the United States' international border with Mexico near Granjeno, Texas, where they crossed the border and United States Customs and Border Protection (CBP) agents promptly took them into custody on May 11, 2018.[26] Mr. Muñoz requested medical aid for blisters on his feet, but at no time did CBP agents cause medical aid to be provided.[27] CBP separated Mr. Muñoz from his family despite his "distraught" behavior.[28] CBP initially placed Mr. Muñoz in the McAllen Processing Center, but eventually took him to the Starr County Jail, during which Mr. Muñoz damaged the transportation vehicle by kicking the interior.[29] CBP agents transferred custody of Mr. Muñoz to "Starr County detention officers," who Mr. Muñoz physically battled, and Starr County jailers placed Mr. Muñoz in a padded cell in the Starr County Jail.[30] Plaintiffs allege that authorities should have sought medical or psychiatric care for Mr. Muñoz and that jailers should have been checking on Mr. Muñoz, but failed to do so.[31] While in the Starr County Jail, Mr. Muñoz improvised a long-sleeved article of clothing[32] into a noose by tying both sleeves to a floor grate, then inserting his head into the loop and twisting his body until the sleeves tightened and ultimately asphyxiated Mr. Muñoz, killing him on the morning of May 13, 2018.[33] Plaintiffs bring causes of action under the Federal Tort Claims Act against the United States,[34] a *Bivens* claim against all CBP agents in their individual capacities,[35] a civil rights claim under 42 U.S.C. § 1983 against Starr County and its Sheriff in official capacities and against Starr County employees in their individual and official capacities,

---

[26] Dkt. No. 61 at 11, ¶¶ 40–45.
[27] *See id.* at 11–12, ¶¶ 42, 46, 54.
[28] *Id.* at 12–13, ¶¶ 49–60.
[29] *Id.* at 13–14, ¶¶ 61–66.
[30] *Id.* at 14–15, ¶¶ 70–77.
[31] *Id.* at 15–16, ¶¶ 79–84.
[32] A sweater. *See* Dkt. No. 153-1 at 14, ¶ 15.
[33] *Id.* at 16–17, ¶¶ 85–89.
[34] 28 U.S.C. § 1346(b).
[35] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

and a claim for violation of the Americans with Disabilities Act[36] and the Rehabilitation Act[37] against Starr County in Plaintiffs' Second Amended Complaint.[38]

This Court held an initial pretrial and scheduling conference on February 25, 2020.[39] The Court granted until March 26, 2020, to complete service of process on two outstanding Defendants.[40] The Court also "indicated it will assess whether limited discovery on the issue of qualified immunity is necessary after ruling on the motions to dismiss."[41] The various motions are ripe for consideration.

## II. PRELIMINARY ISSUES

This Court must satisfy its Article III jurisdiction over this case.[42] This Court has jurisdiction under 28 U.S.C. §§ 1331, 1346, 1402. Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 124(b)(7).

The Court notes that some briefs lack numbered paragraphs entirely, hindering the Court's reference to certain arguments. The Court cautions all parties that submissions must consistently number each paragraph to properly comply with the Federal Rules of Civil Procedure.[43]

---

[36] *See* 42 U.S.C. § 12132.
[37] *See* 29 U.S.C. § 701.
[38] Dkt. No. 61 at 17–26, ¶¶ 94–155.
[39] Minute Entry (Feb. 25, 2020).
[40] *Id.*
[41] *Id.*
[42] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).
[43] FED. R. CIV. P. 7(b)(2) ("The rules governing captions and other matters of form in pleadings apply to motions and other papers."); FED. R. CIV. P. 10(b) (emphasis added) ("A party must state its claims or defenses *in numbered paragraphs*, each limited as far as practicable to a single set of circumstances.").

### III. MOTION TO AMEND AND MOTIONS TO DISMISS

The Court first turns to Plaintiffs' motion to amend[44] because such will determine the operative allegations to assess whether Plaintiffs' claims should be dismissed. Plaintiffs' chief objective with the amended complaint is to "remove claims against Starr County jailers in their official capacity only, and add factual allegations detailing the actions and omissions of the individual defendants in this lawsuit."[45] However, because Plaintiffs admit that whether the Court should grant leave to amend partly turns on whether Plaintiffs have stated valid claims in the Second Amended Complaint,[46] the Court considers the briefs on the motions to dismiss together with Plaintiffs' motion to amend.

#### a. Legal Standards

Federal Rule of Civil Procedure 12(b)(1) permits motions to dismiss for "lack of subject-matter jurisdiction." "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim,"[47] because federal courts only have jurisdiction to decide controversies as conferred by the United States Constitution or by statute.[48] Motions under Rule 12(b)(1) are to be considered first, before addressing any attack on the merits,[49] because while the Court has jurisdiction to determine its jurisdiction,[50] it cannot exercise any "judicial action" other than dismissal when the

---

[44] Dkt. No. 144.

[45] *Id.* at 2, ¶ 2.

[46] *Id.* at 4, ¶ 10 ("Here, for the reasons outlined in Plaintiff's responses to the Defendants' motions to dismiss, *see* Dkt. Nos. 116, 133, 134, Plaintiff has stated valid claims for relief stemming from Mr. Muñoz's death caused by the actions and inactions of Defendants.").

[47] *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998)).

[48] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[49] *In re FEMA Trailer*, 668 F.3d at 286 (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

[50] *United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction.").

Court lacks jurisdiction.[51] If any party attacks the Court's jurisdiction, "the party asserting jurisdiction bears the burden of proof on a 12(b)(1) motion to dismiss."[52] In assessing the Court's jurisdiction, "the district court is to accept as true the allegations and facts set forth in the complaint,"[53] and may "dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[54] Accordingly, the Court may consider evidence outside the pleadings to determine subject matter jurisdiction.[55] Ultimately, "[a] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[56]

As for Plaintiffs' attempt to amend the complaint, after amending a pleading once as a matter of course,[57] "a party may amend its pleading only with the opposing party's written consent or the court's leave."[58] Plaintiffs admit that they have already twice amended their complaint,[59] so the instant motion to amend requires the Court's leave. "Leave to amend is in no way automatic, but the district court must possess a substantial reason to deny a party's request for leave to amend."[60] In determining whether to allow leave to amend a pleading, courts examine whether there is (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5)

---

[51] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

[52] *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011).

[53] *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012).

[54] *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

[55] *Williams v. Wynne*, 533 F.3d 360, 365 n.2 (5th Cir. 2008); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[56] *Choice Inc. of Tex.*, 691 F.3d at 714 (quoting *Ramming*, 281 F.3d at 161).

[57] *See* FED. R. CIV. P. 15(a)(1).

[58] FED. R. CIV. P. 15(a)(2).

[59] Dkt. No. 144 at 1–2, ¶¶ 1–2.

[60] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quotation omitted).

futility of the amendment.[61] As to the fifth factor, the Fifth Circuit has held that courts "need not indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted."[62] Absent such factors, the Court should freely grant the requested leave.[63] Nonetheless, the decision whether to grant leave to amend lies within the Court's sound discretion.[64] "At some point a court must decide that a plaintiff has had a fair opportunity to make his case; if, after that time, a cause of action has not been established," this Court will dismiss the suit.[65]

To determine whether a proposed amended complaint is futile, and when evaluating motions to dismiss for failure to state a claim, the Court applies the Federal Rule of Civil Procedure 12(b)(6) standard.[66] Under Rule 12(b)(6), to avoid dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[67] The Court accepts all well-pleaded facts as true (even if doubtful or suspect[68]) and views those facts in the light most favorable to the plaintiff (because a Rule 12(b)(6) motion is viewed with disfavor[69]), but will not strain to find inferences favorable to the plaintiff.[70] A plaintiff need not plead detailed factual allegations, but must plead more than "'naked assertion[s] devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of

---

[61] *SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n*, 881 F.3d 933, 944 (5th Cir.) (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)), *cert. denied*, 139 S. Ct. 274 (2018).

[62] *United States ex rel. Jackson v. Univ. of N. Tex.*, 673 F. App'x 384, 388 (5th Cir. 2016) (quoting *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968) (per curiam)).

[63] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[64] *Smith*, 393 F.3d at 595 (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)).

[65] *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)).

[66] *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

[67] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[68] *Twombly*, 550 U.S. at 555–56.

[69] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) ("This court construes facts in the light most favorable to the nonmoving party, 'as a motion to dismiss under 12(b)(6) "is viewed with disfavor and is rarely granted."'").

[70] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

a cause of action, supported by mere conclusory statements" to survive a motion to dismiss.[71] Courts first disregard any conclusory allegations or legal conclusions[72] as not entitled to the assumption of truth,[73] and then undertake the "context-specific" task, drawing on judicial experience and common sense, of determining whether the remaining well-pled allegations give rise to entitlement to relief.[74] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[75] Courts have "jettisoned the [earlier] minimum notice pleading requirement"[76] and the complaint must plead facts that "nudge" the claims "across the line from conceivable to plausible."[77] The complaint must plead every material point necessary to sustain recovery; dismissal is proper if the complaint lacks a requisite allegation.[78] However, the standard is only "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[79] In this particular case, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[80]

---

[71] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also id.* at 679 (holding that a complaint that "do[es] not permit the court to infer more than the mere possibility of misconduct" does not suffice to state a claim).
[72] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quotation omitted) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").
[73] *Mustapha v. HSBC Bank USA, NA*, No. 4:11-CV-0428, 2011 WL 5509464, at *2 (S.D. Tex. Nov. 10, 2011) (Hanks, J.) ("[A] court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").
[74] *Iqbal*, 556 U.S. at 678–79; *see also Fernandez-Montez v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").
[75] *Iqbal*, 556 U.S. at 678.
[76] *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009).
[77] *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).
[78] *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006); *accord Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).
[79] *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))
[80] *Iqbal*, 556 U.S. at 676.

The Court is limited to assessing only the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the Court may take judicial notice.[81] Because the focus is on the pleadings, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56,"[82] but not if a Defendant attaches documents to a motion to dismiss that are "referred to in the plaintiff's complaint and are central to her claim."[83]

### b. Analysis

Plaintiffs assert that none of the five warning factors cutting against permitting leave to amend are present.[84] As for futility, Plaintiffs rely on their three response briefs to Defendants' motions to dismiss to establish that the proposed Third Amended Complaint would not be futile.[85] Accordingly, Plaintiffs are asserting that both the Second and Third Amended Complaint state valid claims for relief; the proposed amendment merely adds "specificity to [Plaintiffs'] claims against the individual Defendants, based on information uncovered in the Texas Ranger's investigation into Mr. Muñoz's death."[86] All Defendants respond that Plaintiffs' proposed amended complaint would be futile for failure to state a plausible claim to relief.[87] Defendants also make arguments particular to them, such as the CBP agents' argument that Plaintiffs cannot state a *Bivens* claim against them,[88] which the Court will assess below. Accordingly, the Court will henceforth refer to Plaintiffs' allegations as they are stated in the proposed Third Amended

---

[81] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).
[82] Fed. R. Civ. P. 12(d).
[83] *Causey v. Sewell Cadillac–Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004).
[84] Dkt. No. 144 at 3–5, ¶¶ 6–11.
[85] *Id.* at 4, ¶ 10.
[86] *Id.* at 5, ¶ 11.
[87] Dkt. No. 145 at 1, ¶ 1; Dkt. No. 148 at 1, ¶ 1, Dkt. No. 149 at 15.
[88] Dkt. No. 145 at 2–3, ¶ 3.

Complaint, to test whether amendment would be futile. As noted, the Court need not grant leave to amend where the proposed amendment would fail to state a claim.[89]

### 1.  Whether the Proposed Amended Complaint is Futile

#### i.  Federal Tort Claims Act Claims Against Defendant United States

The Court first turns to Plaintiffs' first through third causes of action in the proposed Third Amended Complaint, the Federal Tort Claims Act claims for intentional infliction of emotional distress, negligence, and gross negligence against the United States of America.[90]

The Federal Tort Claims Act (FTCA) is a partial waiver of sovereign immunity.[91] "A plaintiff may only sue the United States if a federal statute explicitly provides for a waiver of sovereign immunity. The United States must consent to be sued, and that consent is a prerequisite to federal jurisdiction. . . . The FTCA is recognized as providing a waiver of sovereign immunity and provides the sole basis of recovery for tort claims against the United States."[92] Generally, the Federal Tort Claims Act will cause the United States to be liable "in the same manner and to the same extent as a private individual under like circumstances."[93] Nevertheless, the United States has not consented to all suits and the FTCA contains certain exceptions and limitations. In its motion to dismiss, the United States makes seven arguments in favor of dismissal of Plaintiffs' claims under the FTCA: (1) Plaintiffs have failed to exhaust administrative remedies; (2) the "independent contractor exception" bars Plaintiffs' claims; (3) the "discretionary function exception" bars Plaintiffs' claims; (4) there is no cause of action for separating families for purposes of criminal prosecution; and (5) Plaintiffs have failed to state a

---

[89] *See supra* note 62.
[90] Dkt. No. 144-1 at 25–29.
[91] *See Sovereign Immunity*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A government's immunity from being sued in its own courts without its consent.").
[92] *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 287 (5th Cir. 2012).
[93] *Id.* (citing 28 U.S.C. §§ 1346, 2674).

claim for negligence, (6) gross negligence, and (7) intentional infliction of emotional distress.[94] Defendant United States' third argument should have come first, because it is jurisdictional and thus a preliminary determination for the Court before reaching any of the merits.[95] The Court finds the jurisdictional argument dispositive for the reasons elaborated below and thus has no occasion to reach, and makes no determination upon, the United States' other arguments in favor of dismissal.

Defendant United States urges that one of the limitations of the Federal Tort Claims Act bars Plaintiffs' claims. The United States argues that "[t]he Court lacks subject matter jurisdiction over Plaintiffs' FTCA claims pursuant to the discretionary function exception [of the FTCA], which jurisdictionally bars FTCA claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'"[96] The discretionary function exception shields conduct undertaken even without due care.[97] The United States argues that both the decision to separate Mr. Muñoz from his family for the purpose of criminal prosecution and to detain Mr. Muñoz in the Starr County Jail were discretionary decisions that the Court is without jurisdiction to second-guess.[98] Plaintiffs argue that the family separation was required, not discretionary,[99] and that Plaintiffs are challenging the failure to provide nondiscretionary medical care to Mr. Muñoz while he was in custody, not the choice on location of detention.[100] The United States replies that the family separation policy was implemented under the United States Attorney General's discretion and is applied with discretion

---

[94] Dkt. No. 99.
[95] *See supra* note 49.
[96] Dkt. No. 99 at 25 (quoting 28 U.S.C. § 2680(a)).
[97] *Buchanan v. United States*, 915 F.2d 969, 971 (5th Cir. 1990).
[98] Dkt. No. 99 at 27–31.
[99] Dkt. No. 116 at 20, ¶¶ 39–40.
[100] *Id.* at 20–21, ¶¶ 41–43.

and that, even if the policy was mandatory, the directive was followed, so the discretionary function exception applies.[101] Further, the decisions on to whom to release Mr. Muñoz and what kind of medical care to provide to him were all exercises of discretion.[102] The Court turns to the analysis.

"The discretionary function exception is one of several limitations on the FTCA's waiver [of sovereign immunity]. The exception preserves the government's sovereign immunity when the plaintiff's claim is based on an act by a government employee that falls within that employee's discretionary authority."[103] The purpose of the discretionary function exception "is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through tort actions" and to protect the government from liability that would seriously handicap government operations.[104] Essentially, the Federal Tort Claims Act is not designed to make every government employees' decision that a plaintiff feels wronged by subject to judicial review, but to give some relief to plaintiffs injured by government employees' nongovernmental conduct. The Supreme Court gave the following example:

> There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.[105]

---

[101] Dkt. No. 121 at 6–8, ¶¶ 13–17.

[102] *Id.* at 10–11, ¶¶ 22–26.

[103] *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) (citing 28 U.S.C. § 2680(a)).

[104] *Lakomy v. United States*, 70 F. App'x 199, 205 & n.2 (5th Cir. 2003); *accord United States v. Gaubert*, 499 U.S. 315, 323 (1991) (holding that the purpose of the discretionary function exception is to "is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort[;] when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy").

[105] *Gaubert*, 499 U.S. at 325 n.7.

As a further example, the Supreme Court held the United States Coast Guard's decision whether to operate a lighthouse would be protected by the discretionary function exception, but once the Coast Guard undertook to operate the lighthouse, "the failure to maintain the lighthouse in good condition subjected the Government to suit under the FTCA. The latter course of conduct did not involve any permissible exercise of policy judgment."[106]

Accordingly, the rule for analyzing the discretionary function exception and whether an official's actions will be within the exception "involves two inquiries: (1) the conduct must be a matter of choice for the acting employee, and (2) the judgment [must be] of the kind that the discretionary function exception was designed to shield. The plaintiff has the burden of establishing that the discretionary function exception does not apply."[107] The first prong requires only an *element* of judgment or choice; even if a regulation is mandatory with respect to what is to be done about designated inmates, the discretion about whether to effect that designation still involves an element of judgment.[108] The second prong means that, "even if conduct violated a discretionary policy, a complaint may still survive a motion to dismiss (in other words, sovereign immunity would not require dismissal), if it 'allege[s] facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.'"[109] In other words, as this Court has held in assessing the second prong of the discretionary function exception, "[w]hat matters is not whether the employee engaged in some analysis of policy choices before taking the specific actions at issue, but merely whether the actions the employee took are 'susceptible to policy analysis.'"[110] So it "is not enough to

---

[106] *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 538 n.3 (1988) (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955)).

[107] *Tsolmon*, 841 F.3d at 382 (alteration in original) (internal quotation marks and citations omitted).

[108] *See Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010).

[109] *Cuevas v. Westerman*, No. 1:14-CV-133, 2016 WL 11529760, at *5 (S.D. Tex. Nov. 10, 2016) (Hanen, J.) (quoting *United States v. Gaubert*, 499 U.S. 315, 324–25 (1991)).

[110] *Id.* at *7.

establish that an activity is not mandated by statute and involves some element of judgment or choice; to [prevent] dismissal of the suit, the [plaintiff] must also establish that the decision in question was [not] grounded in considerations of public policy."[111] Where conduct is permitted by the applicable law or policy, the Court is to make the "strong presumption" that "the exercise of choice or judgment implicates relevant policy,"[112] in other words, "a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations."[113] Furthermore, the Court strictly construes the waiver of sovereign immunity in favor of the United States.[114]

Importantly, however, the discretionary function exception does not apply to conduct "marked by individual carelessness or laziness."[115] In the case of careless inattention or negligence, the discretionary function exception is no shield "because no policy considerations would be implicated."[116] This is because "negligence unrelated to any plausible policy objectives" is not shielded by the discretionary function exception.[117] The Northern District of Texas endorsed the following reasoning of the Second Circuit:

> We acknowledge that the text of [§ 2680] is somewhat ambiguous, and conceivably could be interpreted to bar damage suits based on any actions or decisions that are not directly controlled by statute or regulation. In particular, it is unclear what weight to give to the concluding phrase of [§ 2680], which asserts that the exception is applicable "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Reading the words out of context, one might characterize an official's lazy or careless failure to perform his or her discretionary

---

[111] *McKinney v. United States*, 950 F. Supp. 2d 923, 928–29 (N.D. Tex. 2013) (quoting *Coulthurst*, 214 F.3d at 110), *aff'd*, *McKinney v. United States*, 584 F. App'x 229 (5th Cir. 2014). The alterations in the quote are because, in the Fifth Circuit, the "plaintiff has the burden of . . . establishing that the discretionary function exception does not apply." *Spotts v. United States*, 613 F.3d 559, 569 (5th Cir. 2010) (citing *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 n.3 (5th Cir. 2009)).

[112] *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009).

[113] *United States v. Gaubert*, 499 U.S. 315, 324 (1991).

[114] *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)).

[115] *Rich v. United States*, 811 F.3d 140, 147 (4th Cir. 2015) (citing *Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000)).

[116] *Id.*

[117] *Coulthurst*, 214 F.3d at 111.

duties with due care as an "abuse of discretion." Reading the statute in this fashion, however, would lead to absurd results. For example, the driver of a mail truck undoubtedly exercises discretion in the manner of driving and makes innumerable judgment calls in the course of making his or her deliveries. In some manner of speaking, therefore, one might characterize it as an "abuse of discretion" for that driver to fail to step on the brake when a pedestrian steps in front of the car, to fail to signal before turning, or to drive 80 mile per hours [sic] in a 35 mile per hour zone. Such a characterization, however, would effectively shield almost all government negligence from suit, because almost every act involves some modicum of discretion regarding the manner in which one carries it out. Such a result is not required by the language of [§ 2680] and would undercut the policy aims at the heart of the FTCA.[118]

The Fifth Circuit recognizes this reasoning: "[A]s virtually every act of a government employee involves at least a modicum of choice, we must exercise restraint when applying the discretionary function exception. If courts were not to exercise restraint, the government would be insulated 'from nearly all tort liability,' thereby frustrating the very purposes that motivated enactment of the FTCA—a classic example of the exception swallowing the rule."[119] With these legal standards in mind, the Court considers the parties' arguments.

### The Discretionary Function Exception as Applied to Family Separation

The United States first argues regarding Plaintiffs' claim for intentional infliction of emotional distress based upon family separation,[120] that the decision to prosecute rests in the absolute discretion of the United States Attorney General, and once the discretionary decision to

---

[118] *McKinney v. United States*, 950 F. Supp. 2d 923, 929 (N.D. Tex. 2013) (alterations in original) (quoting *Coulthurst*, 214 F.3d at 110), *aff'd*, *McKinney v. United States*, 584 F. App'x 229 (5th Cir. 2014); *see Sigman v. United States*, 217 F.3d 785, 796 (9th Cir. 2000) (quoting K. DAVIS, ADMINISTRATIVE LAW TREATISE § 25.08 (Supp. 1982) ("The driver of a mail truck makes many discretionary decisions but they are not within the exception because they involve driving discretion, not governmental discretion. The physician at the veterans' hospital exercises professional discretion in deciding whether or not to operate; ... he combines professional discretion with governmental discretion when he decides that budgetary restrictions require nonuse of an especially expensive treatment in absence of specified conditions.").
[119] *Johnson v. Sawyer*, 980 F.2d 1490, 1502 (5th Cir. 1992) (quoting *Collins v. United States*, 783 F.2d 1225, 1233 (5th Cir. 1986)), *vacated on other grounds*, 47 F.3d 716 (5th Cir. 1995).
[120] *See* Dkt. No. 144-1 at 8, ¶¶ 36–37, & 32, ¶ 151 ("CBP agents, including Defendants Jorge Flores and Christopher Garza knowingly, intentionally, and/or recklessly caused Mr. Muñoz and Plaintiff severe emotional distress by separating Mr. Muñoz from Plaintiff and D.M.A.").

prosecute is made, the separation of prisoners from their families is plainly legal.[121] Plaintiffs respond that the zero tolerance and family separation policies were mandatory, not discretionary.[122] The United States replies that the separation policy itself and its implementation by officers in the field are discretionary, and even if the Attorney General's policy is mandatory, faithful implementation by agents in the field is protected by the discretionary function exception.[123]

The Court agrees with the United States. The Attorney General's memorandum provided in pertinent part, "I direct each United States Attorney's Office along the Southwest Border—to the extent practicable, and in consultation with DHS—to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a). This zero-tolerance policy shall supersede any existing policies."[124] The decision regarding whether to prosecute and ranking prosecution priorities are clearly protected discretionary decisions.[125] Furthermore, the memorandum "provides guidance to those prosecutors on how to exercise their prosecutorial *discretion* with respect to illegal entry enforcement consistent with DOJ priorities,"[126] and the phrase "to the extent practicable" also turns on essentially discretionary judgment.[127] Therefore,

---

[121] Dkt. No. 99 at 27–28.
[122] Dkt. No. 116 at 20, ¶¶ 39–40.
[123] Dkt. No. 121 at 7–8, ¶¶ 14–17.
[124] Memorandum for Federal Prosecutors Along the Southwest Border (Apr. 6, 2018), https://www.justice.gov/opa/press-release/file/1049751/download.
[125] *See Greenlaw v. United States*, 554 U.S. 237, 246 (2008) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)) (The Supreme Court "has recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case'"); *Smith v. United States*, 375 F.2d 243, 247 (5th Cir. 1967) ("The discretion of the Attorney General in choosing whether to prosecute or not to prosecute, or to abandon a prosecution already started, is absolute.").
[126] *Sw. Envtl. Ctr. v. Sessions*, 355 F. Supp. 3d 1121, 1126 (D.N.M. 2018) (emphasis added).
[127] *See Aragon v. United States* 146 F.3d 819, 824 (10th Cir. 1998) ("'[A]s may be practicable' is a prime example of discretionary language, which gave federal agencies a choice or judgment on what action to take, if any.") (alteration in original); *Rosebush v. United States*, 119 F.3d 438, 442 (6th Cir. 1997) ("Decisions concerning what constitutes 'practicable' require the exercise of discretion which is protected by FTCA § 2680(a)."); *Cope v. Scott*, 45 F.3d 445, 450 (D.C. Cir. 1995) (holding that the phrase "to the extent practicable . . . means that the standards are applicable only when no competing priorities exist. Such flexibility is the essence of discretion."); *Cangemi v. United States*, 2016 WL 915173, at *6 (E.D.N.Y. Mar. 7, 2016) ("Courts in this Circuit and elsewhere have

prosecutorial judgment is a matter of choice, and obviously grounded in considerations of public policy—such as the United States Attorney General's priorities and United States Attorneys' discretion—that is intended to be shielded by the discretionary function exception. Plaintiffs do not dispute the conclusion that the Attorney General's memorandum is an "administrative decisio[n] grounded in social, economic, and political policy"[128] that this Court is without jurisdiction to second-guess.[129] Accordingly, to the extent Plaintiffs bring claims against the United States for its "Zero Tolerance policy,"[130] such claims are foreclosed by the discretionary function exception.[131]

### The Discretionary Function Exception as Applied to Medical Treatment

Plaintiffs also assert a negligence and gross negligence claim under the Federal Tort Claims Act. In the proposed Third Amended Complaint, Plaintiffs allege that:

> Defendants United States of America, and CBP agents, including Defendants Jorge Flores and Christopher Garza, owed a legal duty of care to Mr. Muñoz as a detainee in their custody. CBP officers, including Defendants Jorge Flores and Christopher Garza, breached the duty they owed to Mr. Muñoz when they failed to provide him with appropriate medical care, including, but not limited to, in the form of psychiatric treatment after CBP officers caused his disturbed mental state by separating him from his wife and son.[132]

Defendant United States moves to dismiss this claim under the discretionary function exception, because all decisions regarding transferring detainees and designating their medical classifications are discretionary acts.[133] Plaintiffs respond that Defendant had a nondiscretionary duty to provide medical care for inmates in federal custody under the Constitution, statute, federal regulation, and CBP policy, and that Defendant breached its duty to provide medical care

---

determined that the phrase 'to the extent practicable' or its derivatives do not constitute a prescribed course of action.").

[128] *United States v. Gaubert*, 499 U.S. 315, 323 (1991).

[129] *See* Dkt. No. 116 at 19, ¶ 38.

[130] Dkt. No. 116 at 20, ¶ 39; *see also* Dkt. No. 144-1 at 18–29, ¶¶ 148–180.

[131] 28 U.S.C. § 2680.

[132] Dkt. No. 144-1 at 27, ¶¶ 164–65; *see also id.* at 29, ¶ 176.

[133] Dkt. No. 99 at 29.

by failing to treat Mr. Muñoz when he was in CBP custody and by turning Mr. Muñoz over to the Starr County Jail without adequate safeguards.[134] The United States replies that none of Plaintiffs' references call for nondiscretionary conduct, thus all of the Government's decision-making with respect to Mr. Muñoz is protected by the discretionary function exception.[135]

The parties dispute what provision of medical care to Mr. Muñoz was required and nondiscretionary under various federal rules. The Court will assess each rule to determine, under the first prong of the discretionary function exception outlined above,[136] whether the cited rule was a matter of choice for the acting employee with respect to Mr. Muñoz's medical care.

### The United States Constitution

Plaintiffs first argue that Defendants had a nondiscretionary duty to provide medical care for detainees in federal custody under the Constitution, which guarantees the protection of the Fifth Amendment to all people subject to the United States' jurisdiction and "which prohibits '[d]eliberate indifference to serious medical needs.'"[137] However, the Federal Tort Claims Act only waives the United States' sovereign immunity "under circumstances where the United States, if a private person, would be liable to the claimant."[138] Private individuals cannot be liable for constitutional torts, and constitutional tort claims are not actionable under the FTCA.[139] Accordingly, to the extent Plaintiffs attempt to bring a constitutional tort claim against the United States under the Federal Tort Claims Act, or assert that the Constitution itself furnishes a nondiscretionary standard of medical care that is actionable under the FTCA in the event such care is not provided, such claim is entirely jurisdictionally barred.

---

[134] Dkt. No. 116 at 21–22, ¶¶ 42–45.
[135] Dkt. No. 121 at 9–11, ¶¶ 19–26.
[136] *See supra* notes 107–108 and accompanying text.
[137] Dkt. No. 116 at 21, ¶ 42 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).
[138] 28 U.S.C. § 1346(b)(1).
[139] *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.").

### Federal Statute

Plaintiffs next argue that the nondiscretionary duty to provide medical care is "codified in federal statute, 42 U.S.C. § 249(a)."[140] That statute subsection provides in full: "Any person when detained in accordance with quarantine laws, or, at the request of the Immigration and Naturalization Service, any person detained by that Service, may be treated and cared for by the Public Health Service."[141] Nothing in this statute provides for a nondiscretionary standard or provision of healthcare, and like the "to the extent practicable" language analyzed above, "[t]he word 'may' clearly connotes discretion."[142] When a policy or rule "fails to prescribe 'specific direction' as to what course of action an employee must follow, it generally fails to establish a nondiscretionary duty."[143] Therefore, the Court finds that the provision of medical care under 42 U.S.C. § 249(a) was a discretionary "matter of choice for the acting employee."[144]

### Federal Regulation

Plaintiffs next cite to a federal regulation, 42 C.F.R. § 34.7, to establish the nondiscretionary duty to provide medical care to detainees.[145] The Department of Health and Human Services regulation provides in relevant part:

> (a) An alien detained by or in the custody of DHS [Department of Homeland Security] may be provided medical, surgical, psychiatric, or dental care by HHS [Health and Human Services] through interagency agreements under which DHS shall reimburse HHS. Aliens found to be in need of emergency care in the course of medical examination shall be treated to the extent deemed practical by the attending physician and if considered to be in need of further care, may be referred to DHS along with the physician's recommendations concerning such further care.

---

[140] Dkt. No. 116 at 21, ¶ 42.
[141] 42 U.S.C. § 249(a).
[142] *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994).
[143] *Lopez v. U.S. Immigration & Customs Enf't*, 455 F. App'x 427, 433 (5th Cir. 2011).
[144] *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) (quotation omitted).
[145] Dkt. No. 116 at 21, ¶ 42.

The language Plaintiffs point to, "Aliens found to be in need of emergency care in the course of medical examination shall be treated to the extent deemed practical by the attending physician," contains at least two matters of judgment for the acting employee: "Aliens *found to be* in need" and "to the extent deemed practical," which are discretionary for the reasons elaborated above.

### United States Customs and Border Protection Policy

Plaintiffs next cite to a CBP policy document to establish a nondiscretionary duty to provide medical care.[146] Plaintiffs cite to one CBP policy standard which states "Medical Issues: Officers/Agents must be alert to medical symptoms such as coughing, fever, diarrhea, rashes or emaciation, in addition to obvious wounds, injuries, cuts, bruising or bleeding, heat related injury or illness, and dehydration. Any observed or reported injury or illness must be reported, and appropriate medical care must be provided or sought in a timely manner."[147] Plaintiffs also cite another CBP policy which states, "Detainee Distress: In addition to verbal communication, officers/agents must be alert to non-verbal cues exhibited by detainees that might indicate that the detainee is in mental or physical distress. This might include expressions of suicidal thoughts, hallucinations, or other signs of disorientation."[148] Nothing in these policies calls for nondiscretionary conduct. "Despite the policy statement's mandate that certain information 'shall' be [reported, and appropriate medical care must be provided or sought], the directive

---

[146] Dkt. No. 116 at 21, ¶ 42 (citing U.S. Customs and Border Protection, *National Standards on Transport, Escort, Detention, and Search* (Oct. 2015),
http://web.archive.org/web/20200224000858/https://www.cbp.gov/sites/default/files/assets/documents/2017-Sep/CBP%20TEDS%20Policy%20Oct2015.pdf.
[147] *Id.* (quoting U.S. Customs and Border Protection, *National Standards on Transport, Escort, Detention, and Search*, § 2.5 at 5–6 (Oct. 2015),
http://web.archive.org/web/20200224000858/https://www.cbp.gov/sites/default/files/assets/documents/2017-Sep/CBP%20TEDS%20Policy%20Oct2015.pdf.
[148] Dkt. No. 144-1 at 12, ¶ 72 (referring to U.S. Customs and Border Protection, *National Standards on Transport, Escort, Detention, and Search*, § 2.5 at 6 (Oct. 2015),
http://web.archive.org/web/20200224000858/https://www.cbp.gov/sites/default/files/assets/documents/2017-Sep/CBP%20TEDS%20Policy%20Oct2015.pdf.

includes an 'element' of discretion."[149] Plaintiffs' argument with respect to the CBP policy simply recapitulates the argument, already rejected by the Fifth Circuit, that certain policy language that agents "must" or "will" perform certain activities establishes a nondiscretionary duty on the part of agents.[150] The Fifth Circuit held that "many policy statements couched in seemingly mandatory language ultimately present only 'generalized, precatory, or aspirational language that is too general to prescribe a specific course of action for an agency or employee to follow.' Thus, in *Freeman,* Department of Homeland Security policies stating where medical support 'is required' following a disaster articulated only aspirational goals."[151] In the case just quoted, the Fifth Circuit went on to hold that the United States Marshals Service policies at issue did not impose specific nondiscretionary duties and the marshals' conduct was shielded by the discretionary function exception.[152]

Similarly here, the language "appropriate medical care" is generalized. The policy language fails to "define a non-discretionary course of action specific enough to render the discretionary function exception inapplicable."[153] What constitutes "appropriate medical care" necessarily relies on the discretion and policy judgments of the acting employees.[154] The Court finds that the CBP policy language involved conduct that is "a matter of choice for the acting employee."[155]

---

[149] *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010).

[150] Dkt. No. 116 at 21–22, ¶¶ 42–45.

[151] *Lopez v. U.S. Immigration & Customs Enf't*, 455 F. App'x 427, 433 (5th Cir. 2011) (quoting *Freeman v. United States,* 556 F.3d 326, 338 (5th Cir. 2009)).

[152] *Id.* at 433–34.

[153] *Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005).

[154] *See supra* nn.161–173 and accompanying text.

[155] *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) (quotation omitted).

**Whether the Discretionary Function Exception Shields the Judgments at Issue**

Having found that all conduct in question in a discretionary matter of choice, the question remains under the second prong of the discretionary function exception whether Plaintiffs have established that "the judgment[s are not] of the kind that the discretionary function exception was designed to shield."[156] The Court holds that Plaintiffs have failed to carry their burden. Plaintiffs offer only a single paragraph addressing the conduct and judgments at issue, arguing that negligent or absent-minded conduct is not protected by the discretionary function exception.[157] While true, Plaintiffs fail to address[158] and therefore fail to carry their burden to establish that the medical care rendered (or failed to be rendered) to Mr. Muñoz is *not* an exercise of the kind of governmental or policy discretion that is shielded by the exception, or *is* a type of unprotected discretion (such as a purely medical determination) that does not involve competing policy considerations.[159]

In this case, the CBP agents that took Mr. Muñoz into custody needed to balance his requests for medical aid[160] against the medical severity, the resources available including security, the requests of other detainees, and the governmental policy and expertise in dealing with individuals in Mr. Muñoz's specific situation. Again, "the applicability of the discretionary function exception does not turn on evidence of the actual decisions made by the defendants, but,

---

[156] *Id.* (quotation omitted).

[157] *See* Dkt. No. 116 at 19, ¶ 38.

[158] *See id.* at 20–22, ¶¶ 41–45.

[159] *See Sigman v. United States*, 217 F.3d 785, 796 (9th Cir. 2000) (quotation omitted) (holding that United States Air Force physicians' failure to properly diagnose the plaintiff in the course of treatment did "not concern actions which are the product of judgment driven by the consideration of competing policy-based choices" and did "not relate to any special functions reserved to governmental policy and expertise and exempted from the FTCA's waiver of immunity.")

[160] *See* Dkt. No. 144-1 at 9, ¶ 43 ("Shortly after the family crossed the border near Granjeno, Texas they encountered CBP agents, including Defendant Abram Lerma. Upon being detained, Plaintiff and Mr. Muñoz requested medical aid for Mr. Muñoz.").

rather, on whether the decision is or is not susceptible to policy analysis."[161] The CBP agents "had to make a policy decision as to what to do with [Mr. Muñoz]."[162] The agents' options included (1) treating him immediately, (2) delaying treatment until conditions were more favorable at Mr. Muñoz's first facility, or (3) transferring Mr. Muñoz to a different facility. The CBP agents initially chose to segregate and restrain Mr. Muñoz in his first facility, and ultimately pursued the third option.[163] These were judgments susceptible to policy analysis:

> [T]he Border Patrol Agents' decision to [delay treatment and transfer Mr. Muñoz to a different facility] was the product of a judgment or choice, and the Border Patrol Agents' conduct in the situation was not mandated by any statute, regulation or policy .... [T]he Border Patrol Agents' decision was unequivocally subject to policy analysis, as it involved the use of government resources and necessarily involved a decision as to what the Border Patrol should do with a [detainee] in the unique circumstances presented by such a case.[164]

This Court has rejected the argument that "good quality medical care" for detainees is a mandatory responsibility of the government in the context of the discretionary function exception, because the extension of Plaintiffs' logic would make "any act regarding medical care a prescribed operational one, falling outside the scope of the FTCA discretionary exemption."[165] Furthermore, the Court's finding that Plaintiffs have failed to satisfy their burden is consistent with the Fifth Circuit's admonishments that the Court must generally defer to the expertise of prison officials and is not to substitute its judgment for the considerations of such officials.[166] "[T]he duty to maintain safekeeping of inmates is a discretionary one."[167]

---

[161] *Andrade v. Chojnacki*, 338 F.3d 448, 457 (5th Cir. 2003) (quotation omitted).

[162] *Castro v. United States*, No. CIV.A. C-06-61, 2007 WL 471095, at *8 (S.D. Tex. Feb. 9, 2007) (Jack, J.), *aff'd*, 608 F.3d 266 (5th Cir. 2010) (en banc).

[163] Dkt. No. 144-1 at 11, ¶ 63 & 13, ¶ 77.

[164] *Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010) (en banc) (capitalization alterations in original) (quotation omitted).

[165] *Ahern*, 2017 WL 2821949, at *2.

[166] *Buchanan v. United States*, 915 F.2d 969, 972 (5th Cir. 1990).

[167] *Huff v. Neal*, 555 F. App'x 289, 298 (5th Cir. 2014).

As for the decision to transfer Mr. Muñoz to a different facility—the Starr County Jail[168]—this Court has conclusively held that the decision to hire a contractor, the choice of contractor, and the degree of oversight over a contractor are all policy-based considerations that are shielded by the discretionary function exception.[169] As this Court pointed out, "a decision as to the best allocation or use of resources is 'inherently bound up in considerations of economic and political policy, and accordingly is precisely the type of governmental decision that Congress intended to insulate from judicial second-guessing.'"[170] "[I]f a government employee's decision truly involves a decision on how to allocate resources, then the decision is the kind of decision that satisfies prong two of the discretionary function analysis."[171] Ultimately, the Court finds that Plaintiffs have failed to carry their burden to demonstrate that the judgments at issue were not "of the kind that the discretionary function exception was designed to shield"[172] because the CBP agents' complained-of judgments are "susceptible to policy analysis" that immunizes them from judicial review.[173]

The Court holds that Plaintiffs have failed to carry their burden to establish that the discretionary function exception does not apply to Plaintiffs' Federal Tort Claims Act claims, the first, second, and third causes of action in the proposed Third Amended Complaint.[174] Therefore, the Court holds that it lacks jurisdiction under the Federal Tort Claims Act to entertain Plaintiffs' claims, **GRANTS** the United States' motion to dismiss,[175] and **DENIES** Plaintiffs' motion to

---

[168] Dkt. No. 144-1 at 13, ¶ 76.

[169] *Ahern v. United States*, No. 2:14-CV-259, 2017 WL 2821949, at *2 (S.D. Tex. June 29, 2017) (Ramos, J.) (citing *Lopez v. U.S. Immigration & Customs Enf't*, 455 F. App'x 427, 432 (5th Cir. 2011) & *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005)).

[170] *Castro*, 2007 WL 471095, at *8 (quoting *Baum v. United States*, 986 F.2d 716, 724 (4th Cir. 1993)).

[171] *Cuevas v. Westerman*, No. 1:14-CV-133, 2016 WL 11529760, at *7 n.2 (S.D. Tex. Nov. 10, 2016) (Hanen, J.).

[172] *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016).

[173] *Castro*, 2007 WL 471095, at *8 (quoting *Lakomy v. United States*, 70 F. App'x 199, 205 (5th Cir. 2003)).

[174] *See* Dkt. No. 144-1 at 25–29, ¶¶ 148–180.

[175] Dkt. No. 99.

amend[176] to the extent Plaintiffs would attempt to allege any claims against the United States or United States Customs and Border Protection agents under the Federal Tort Claims Act. Plaintiffs' claims under the Federal Tort Claims Act are **DISMISSED WITH PREJUDICE**. The Court has no occasion to reach, and makes no determination upon, the United States' other arguments in favor of dismissal.

> ii.   *Bivens Claim Against All Named and Unknown Customs and Border Protection Agents in their Individual Capacities*

Plaintiffs' fourth cause of action in their proposed Third Amended Complaint is a *Bivens*[177] claim against Defendant CBP agents Alvaro A. Guajardo-Martinez, Christopher R. Garza, Jorge Flores, Abram Lerma, and "Unknown United States Customs and Border Protection Agents."[178] Plaintiffs allege that the CBP agents' failure to provide medical care violated Mr. Muñoz's constitutional rights.[179] The CBP agents oppose leave to amend for the reasons outlined in their motion to dismiss, chiefly that there is no *Bivens* remedy available to Plaintiffs in this context.[180]

In their motion to dismiss, the CBP agents argue that the Court should not extend *Bivens* to provide a remedy in this context, and that the CBP agents are entitled to qualified immunity even if the Court does extend *Bivens*.[181] Plaintiffs respond that *Bivens* already offers a remedy for failure to provide medical care; that even if this context is new, *Bivens* should provide a remedy; and that qualified immunity does not shield CBP Defendants from liability.[182] The CBP

---

[176] Dkt. No. 144.
[177] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).
[178] Dkt. No. 144-1 at 5, ¶¶ 17–21.
[179] *Id.* at 29–30, ¶¶ 183–189.
[180] Dkt. No. 145 at 4–5, ¶¶ 5–6.
[181] Dkt. No. 124 at 2–3.
[182] Dkt. No. 133 at 2.

agents reply with disagreement to all of Plaintiffs' arguments.[183] The Court turns to the arguments, which requires a brief explanation of the history of the *Bivens* doctrine.

In 1871, Congress authorized suits by injured people against state officials for violations of a person's federal constitutional rights, but Congress has never specifically authorized suits against federal officials for violations of personal constitutional rights.[184] Against that backdrop, the Supreme Court decided *Bivens* in 1971 which implied "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures."[185] Between 1971 and 1980, the Supreme Court also authorized a gender discrimination remedy under the Fifth Amendment in *Davis v. Passman* and a failure to provide adequate medical treatment remedy under the Eighth Amendment in *Carlson v. Green*.[186] Since 1980, however, the Supreme Court has retreated from the "*ancien regime*" of implying causes of action and held that, if Congress intends litigants to have private causes of action for violation of their rights, the "'far better course' is for Congress to confer that remedy in explicit terms."[187] Since 1980, the Supreme Court has rejected arguments for extending *Bivens* and implying damages remedies without specific statutory authorization into new contexts, noting that extending *Bivens* is a "disfavored judicial activity."[188] The Supreme Court has counseled significant hesitation and caution before lower courts recognize a new cause of action under *Bivens*, but has nevertheless not eliminated the possibility of extension completely.[189] However, the Fifth Circuit has expressed deep skepticism of extending *Bivens* and acknowledged that even claims under the same clause of the same constitutional amendment "*in the same way*" will not be recognized

---

[183] *See* Dkt. No. 136 at 2.
[184] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).
[185] *Id.*
[186] *Id.* at 1854–55.
[187] *Id.* at 1855 (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979)).
[188] *Id.* at 1857 (quotation omitted).
[189] *Id.* at 1857–58.

under the *Bivens* doctrine.[190] For example, the Supreme Court rejected virtually identical *Bivens* claims under the Fifth Amendment "because the plaintiff was a military servicemember rather than a congressional employee" and under the Eighth Amendment because the action was against private prison officials rather than federal prison officials.[191] At least two Justices of the Supreme Court are of the opinion that the *Bivens* doctrine should be discarded completely.[192] And at least eight times since 1980, the Supreme Court has rejected *Bivens* extensions.[193] This Court acknowledges that the *Bivens* doctrine is moribund.

"[T]here is [now] a two part inquiry for determining whether to allow a *Bivens* cause of action: (1) whether the instant case involves a new context that is distinct from prior *Bivens* cases and (2) whether any special factors preclude extending *Bivens* to this new context."[194] Under the first prong, "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court, then the context is new."[195] "Even a modest extension is still an extension,"[196] so a case is meaningfully different "if it implicates a different constitutional right" than the Supreme Court's three *Bivens* doctrine cases,[197] and might be meaningfully different merely "because of the rank of the officers involved," among other factors.[198] Under the second prong, the central analysis concerns "separation-of-powers principles"[199] and the Court considers "whether there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, and whether the Judiciary is well suited, absent congressional action or

---

[190] *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) (emphasis in original).
[191] *Id.* (citing *Chappell v. Wallace*, 462 U.S. 296 (1983) & *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).
[192] *Hernandez v. Mesa*, 140 S. Ct. 735, 750 (2020) (Thomas, J., concurring).
[193] *Ziglar*, 137 S. Ct. at 1857 (collecting cases).
[194] *Maria S. v. Garza*, 912 F.3d 778, 784 (5th Cir.) (quotations omitted), *cert. denied,* 140 S. Ct. 81 (2019).
[195] *Ziglar*, 137 S. Ct. at 1860.
[196] *Id.* at 1864.
[197] *Id.*
[198] *Id.* at 1860.
[199] *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (quoting *Ziglar*, 137 S. Ct. at 1857).

instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."[200]

---

[200] *Id.* (internal quotation marks and citations omitted).

**Whether Plaintiffs' Allegations Involve a New *Bivens* Context**

Plaintiffs' *Bivens* claim in the proposed Third Amended Complaint alleges that CBP agents violated Mr. Muñoz's Fifth Amendment due process rights.[201] The Fifth Amendment provides that "No person shall be . . . deprived of life, liberty, or property, without due process of law."[202] Plaintiffs' cause of action under the Fifth Amendment is in accord with Fifth Circuit precedent, which considers "a person detained for deportation to be the equivalent of a pretrial detainee; a pretrial detainee's constitutional claims are considered under the due process clause [of the Fifth Amendment] instead of the Eighth Amendment."[203] Plaintiffs first assert that their claim in this context is not distinct from prior *Bivens* cases, and Plaintiffs cite four District Court cases from across the United States, one pre-*Ziglar* Fourth Circuit case, and one post-*Ziglar* Third Circuit case in support.[204] CBP agents disagree and assert that Plaintiffs are raising a claim in a new context under the first prong of the test.[205]

The Court agrees with the CBP agent Defendants. The Court first notes that five of Plaintiffs' cited cases are inapposite. *Martinez v. D'Agata* held that "there *is* a meaningful difference between *Bivens* and plaintiff's allegations;"[206] *Self v. Warden, MCC*,[207] and *Williams v. U.S. Department of Justice*,[208] held, as a merely marginal and preliminary determination in a footnote under the Court's obligations to screen prisoner complaints,[209] that the plaintiffs' claim for inmate mistreatment did not differ meaningfully from the *Carlson* holding implying a *Bivens*

---

[201] Dkt. No. 144-1 at 29–30, ¶ 183.
[202] U.S. CONST. amend. V.
[203] *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000).
[204] Dkt. No. 133 at 10–11, ¶¶ 18–19.
[205] Dkt. No. 124 at 16–17, ¶ 14; Dkt. No. 140 at 7–8, ¶¶ 5–6.
[206] No. 16 CV 44 (VB), 2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019) (emphasis added).
[207] No. 318CV01451 LABMDD, 2018 WL 4502370, at *4 n.4 (S.D. Cal. Sept. 19, 2018).
[208] No. CV 19-00081 JMS-KJM, 2019 WL 1768610, at *2 n.8 (D. Haw. Apr. 22, 2019).
[209] *See* 28 U.S.C. § 1915A.

remedy for prisoner mistreatment; *Loe v. Armistead*[210] was decided *during* the 1972–1980 period when the Supreme Court was implying causes of action directly under the Constitution and is irrelevant to the *Ziglar v. Abbasi* analysis; and *Bistrian v. Levi*[211] only concludes that the Supreme Court *already* recognized a *Bivens* remedy in a "failure to protect" claim for prisoner-on-prisoner violence in *Farmer v. Brennan*[212] that the Third Circuit extended to claims by pretrial detainees, but the case says nothing about failure to provide medical care claims.[213] Plaintiffs' only remaining case is *Laurent v. Borecky*,[214] an Eastern District of New York case that is not binding on this Court.[215] *Laurent* dealt with a prisoner's *Bivens* claims for deliberate indifference in providing medical care while incarcerated. The Court admitted that the prisoner's Fifth Amendment claim differed from the Eighth Amendment claim approved in *Carlson v. Green*,[216] but held that the prisoner's claim against prison officials for failure to treat "bears an extremely strong resemblance to [one of] the three *Bivens* claims the [Supreme] Court has approved in the past."[217] The Eastern District of New York found that, "[i]n light of the significant distinctions between *Ziglar* and the instant case, the Court does not find that Plaintiff's claim alleges a 'new *Bivens* context.'"[218]

This Court finds the Eastern District of New York case unpersuasive under the first prong of *Ziglar*, because it ignored the Supreme Court's "proper test for determining whether a case presents a new *Bivens* context," which includes analyzing the potential differences from previous

---

[210] 582 F.2d 1291, 1294 (4th Cir. 1978).

[211] 912 F.3d 79, 90–92 (3d Cir. 2018).

[212] 511 U.S. 825 (1994).

[213] *Bistrian*, 912 F.3d at 91 ("*Farmer* continues to be the case that most directly deals with whether a *Bivens* remedy is available for a failure-to-protect claim resulting in physical injury.").

[214] No. 17-CV-3300 (PKC)(LB), 2018 WL 2973386 (E.D.N.Y. June 12, 2018).

[215] *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quotation omitted) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

[216] 446 U.S. 14 (1980).

[217] *Laurent*, 2018 WL 2973386, at *5 (alterations in original) (quotation omitted).

[218] *Id.*

*Bivens* cases (such as the constitutional right at issue and the judicial guidance on the problem confronted),[219] and because the court failed to couch its holding, reached in two brief paragraphs, in any Court of Appeals precedent regarding *Bivens*. The case also has no appellate history. As elaborated above, the Fifth Circuit is skeptical of even identical constitutional claims, much less claims asserting different constitutional rights. The Fifth Circuit also "has cautioned that markedly similar claims brought under different amendments should not automatically be considered analogous."[220]

Accordingly, the Court concurs with the CBP Defendants that "there is no avoiding the novelty of Plaintiffs' *Bivens* theories."[221] *Ziglar* effectively rejects Plaintiffs' position. Although Plaintiffs seem to be arguing for a modest extension of *Carlson*'s holding implying a remedy for prisoner mistreatment under the Eighth Amendment to pretrial detainees, in *Ziglar*, the Supreme Court acknowledged that *Carlson*:

> did allow a *Bivens* claim for prisoner mistreatment—specifically, for failure to provide medical care. And the allegations of injury here [harsh prison conditions and physical abuse by prison guards] are just as compelling as those at issue in *Carlson*. . . . Yet even a modest extension is still an extension. And this case does seek to extend *Carlson* to a new context. . . . The constitutional right is different here, since *Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth.[222]

Here, Plaintiffs allege that the CBP Defendants, "by separating [a suspected illegal alien] from his family and . . . failing to provide him with medical attention" violated Mr. Muñoz's Fifth Amendment right.[223] Because Plaintiffs' claim is predicated on a different constitutional amendment, against a different type of defendant, by a different type of detainee, than that at issue in *Carlson*, even if Plaintiffs call for only a modest extension, the context is nevertheless

---

[219] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017).
[220] *Rroku v. Cole*, 726 F. App'x 201, 206 (5th Cir. 2018).
[221] Dkt. No. 136 at 7 (capitalizations omitted).
[222] *Ziglar*, 137 S. Ct. at 1864.
[223] Dkt. No. 144-1 at 29–30, ¶ 183.

new.[224] In short, the Court finds that Plaintiffs' case claiming Fifth Amendment violations in the immigration detention context differs meaningfully from previous *Bivens* cases and the new context necessitates that the Court examine whether special factors counsel against extending *Bivens* to this new context.

### Whether Special Factors Preclude Extension of *Bivens* into this Context

Defendant CBP agents argue that various special factors should lead this Court to decline to extend a *Bivens* remedy into this new context.[225] Plaintiffs disagree.[226] Plaintiffs first argue that the failure of Congress to explicitly legislate a damages remedy in this context does not counsel against extending a damages remedy, because the Supreme Court has counseled that congressional silence is not a signpost for congressional intent.[227] However, the case Plaintiffs cite concerned only statutory interpretation and the idea that congressional silence does not indicate adoption of a controlling rule or interpretation of law.[228] In contrast, *Ziglar* explicitly held "in any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant" when considering whether to extend a *Bivens* claim, particularly where Congress has given "frequent and intense" attention to the statutory regime at issue.[229] There is no question that Congress has given thorough and intense consideration to the statutory regime concerning immigration detention. As the CBP Defendants thoroughly establish in their brief, Congress has passed legislation concerning immigration prosecution and detainee treatment, responded to highly publicized complaints of "family separation" with legislation, and exercised oversight and

---

[224] Furthermore, the Supreme Court has already declined to extend *Bivens* to "a private corporation operating a halfway house under contract with the Bureau of Prisons," which the Court likens to the CBP's relationship to the Starr County Jail in this case. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001).
[225] Dkt. No. 124 at 21–29, ¶¶ 21–30.
[226] Dkt. No. 133 at 16–18, ¶¶ 33–38.
[227] *Id.* at 16–17, ¶ 34 (quoting *United States v. Wells*, 519 U.S. 482, 495–96 (1997)).
[228] *See Wells*, 519 U.S. at 496.
[229] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862 (2017).

held hearings on family separations near the United States' international border with Mexico.[230] Congressional attention to the matter has been thorough and sustained. Plaintiffs' argument is foreclosed. As the Fifth Circuit "held in *De La Paz v. Coy*, '[d]espite its repeated and careful attention to immigration matters, Congress has declined to authorize damage remedies against individual agents involved in civil immigration enforcement. The institutional silence speaks volumes and counsels strongly against judicial usurpation of the legislative function.'"[231]

Plaintiffs next argue that their claims do not raise "separation-of-powers concerns" that would counsel against extending *Bivens*.[232] Their argument contrasts starkly with the allegation in the proposed Third Amended Complaint that "CBP agents were furthering the intent of the government's Zero Tolerance policies when they separated Mr. Muñoz from his family, acting with particular cruelty, emboldened by the intent behind that policy."[233] In short, Plaintiffs' argument is disingenuous as Plaintiffs clearly complain of the impact of governmental policy as promulgated by the Executive Branch and seek relief from that policy in this Court.[234] Moreover, Plaintiffs' position that judicial review of immigration policy or enforcement does not implicate separation of powers concerns has been thoroughly rejected by the applicable precedent.[235] Here, Plaintiffs' allegations "specifically targe[t] the Trump Administration's immigration enforcement

---

[230] Dkt. No. 124 at 22, ¶ 22 nn.4–6 and accompanying text.

[231] *Maria S. v. Garza*, 912 F.3d 778, 784 (5th Cir. 2019) (quoting *De La Paz v. Coy*, 786 F.3d 367, 377 (5th Cir. 2015)), *cert. denied,* 140 S. Ct. 81 (2019).

[232] Dkt. No. 133 at 17, ¶ 35.

[233] Dkt. No. 144-1 at 10, ¶ 47.

[234] *See* Dkt. No. 116 at 20, ¶ 40 ("Thus, in separating Mr. Muñoz from his family, CBP agents were acting in accordance with a policy that requires such separations; the agents had no discretion to act otherwise.").

[235] *See Hernandez v. Mesa*, 140 S. Ct. 735, 746 (2020) ("[T]he conduct of agents positioned at the border has a clear and strong connection to national security, as the Fifth Circuit understood."); *Cantú v. Moody*, 933 F.3d 414, 424 (5th Cir. 2019) ("A final special factor counseling hesitation is the nature of the underlying federal law enforcement activity" which "implicates the security of our international border."); *Maria S.*, 912 F.3d at 784 ("[J]udicial meddling in immigration matters is particularly violative of separation-of-powers principles . . . ."); *Tun-Cos v. Perrotte*, 922 F.3d 514, 526 (4th Cir. 2019) (quotation omitted) ("[I]mmigration enforcement . . . has the natural tendency to affect diplomacy, foreign policy, and the security of the nation, which ... counsel hesitation in extending *Bivens*."), *cert. denied,* No. 19-661, 2020 WL 1496627 (U.S. Mar. 30, 2020).

policy with the purpose of altering it."[236] For example, Plaintiffs' allegation that "[t]he intent of enacting such policies [Zero Tolerance immigration policies] was to deter future migration by subjecting individuals detained by CBP agents to harsh treatment likely to cause severe trauma, in order to make examples of them."[237] "This attack on executive policy represents yet another 'special factor counselling hesitation.'"[238]

In sum, the Court finds that the allegations and claims raised in Plaintiffs' proposed Third Amended Complaint implicate governmental policy, national security, and separation-of-powers concerns that counsel against extending *Bivens* into this context. "In the face of these considerations, 'courts may not create [a cause of action], no matter how desirable that might be as a policy matter.'"[239] "The proper balance in situations like this . . . is one for the Congress to undertake, not the Judiciary."[240] Accordingly, the Court **GRANTS** "Individual Federal Defendants' Motion to Dismiss,"[241] and **DENIES** Plaintiffs' motion to amend[242] to the extent Plaintiffs would attempt to allege any claims against CBP or other federal agents under the *Bivens* doctrine. Plaintiffs' claim under the *Bivens* doctrine is **DISMISSED WITH PREJUDICE**. The Court has no occasion to reach, and makes no determination upon, whether CBP agents are entitled to qualified immunity in these circumstances.[243]

---

[236] *Tun-Cos*, 922 F.3d at 527.
[237] Dkt. No. 144-1 at 8, ¶ 38.
[238] *Tun-Cos*, 922 F.3d at 528 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017)).
[239] *Cantú*, 933 F.3d at 424 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001)).
[240] *Ziglar*, 137 S. Ct. at 1849.
[241] Dkt. No. 124.
[242] Dkt. No. 144.
[243] *See* Dkt. No. 124 at 29–40, ¶¶ 31–46.

    *iii.  Claim for Deprivation of Civil Rights under 42 U.S.C. § 1983 Against the County of Starr, Texas; the Starr County Sheriff in his Official Capacity; and All Other Named and Unknown County of Starr Employees in their Individual Capacities*

Defendants bring similar but not identical motions to dismiss Plaintiffs' claims under 42 U.S.C. § 1983.[244] Each motion is brought by the individual state officers or jailers: Alex Garcia,[245] Crecencio Galvan,[246] Evelario Garza,[247] Clyde Guerra,[248] Hector Lopez,[249] Sheriff Rene "Orta" Fuentes,[250] Sammy Marroquin,[251] and Raul Garcia;[252] and Defendant Starr County, Texas, also brings its own motion to dismiss.[253] Each motion on behalf of an individual raises the defense of qualified immunity, Defendant Sheriff Fuentes additionally argues that Plaintiffs' allegations fail to establish his supervisory liability,[254] and Defendant Starr County argues that Plaintiffs cannot hold the County liable under municipal or policy liability.[255] Each motion also asserts that Plaintiffs have failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). In response to Plaintiffs' motion to amend, these Defendants raise the same arguments.[256] The Court turns to the arguments and first to qualified immunity, because the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage

---

[244] Dkt. Nos. 125–131 & 142–143.
[245] Dkt. No. 125.
[246] Dkt. No. 126.
[247] Dkt. No. 127.
[248] Dkt. No. 128.
[249] Dkt. No. 129.
[250] Dkt. No. 130.
[251] Dkt. No. 142.
[252] Dkt. No. 143.
[253] Dkt. No. 131.
[254] Dkt. No. 130 at 3–4.
[255] Dkt. No. 131 at 3–4.
[256] *See* Dkt. No. 149 at 7–11.

in litigation."[257] The Court is required to and will "examine each individual defendant's entitlement to qualified immunity separately."[258]

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[259] The purpose of qualified immunity is to balance the "the willingness of public officials to fully discharge their professional duties" (for example, by obviating the need for law enforcement officers to pause to consider their potential civil liability before acting), with the "right of injured persons to receive redress for a violation of their constitutional rights, with the threat of monetary damages operating to deter public officials from violating citizens' constitutional rights."[260] Generally, the Court must "decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right [and] . . . whether the right at issue was clearly established at the time of defendant's alleged misconduct."[261] However, the Court is to "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[262]

The inquiry under the first prong requires no more than that Plaintiffs state a plausible claim for relief that rests on more than conclusions, as articulated above.[263] Under the second prong,

> [t]he constitutional right must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right. The Supreme Court has warned

---

[257] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (per curiam)).

[258] *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 395 (5th Cir. 2000) (citing *Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir. 1999)).

[259] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

[260] *Sanchez v. Swyden*, 139 F.3d 464, 468 (5th Cir. 1998).

[261] *Pearson*, 555 U.S. at 232.

[262] *Id.* at 236.

[263] *Anderson v. Valdez*, 845 F.3d 580, 589–90 (5th Cir. 2016); *see supra* Section II.a.

against vague or general assertions of constitutional rights and has required a § 1983 plaintiff to state with specificity the constitutional right that has been allegedly violated—otherwise, liability could be imposed in every case. The federal courts of appeal have taken an especially strict approach to determining whether a constitutional right is cognizable, thus resolving any doubts in the law against § 1983 plaintiffs.[264]

So "[t]o identify whether the law was clearly established when the officers acted," there must be "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[265] Plaintiff bears the burden to identify the authority "that does not define the law at a high level of generality,"[266] and rather frames the right that was allegedly violated with sufficient specificity and granularity that it is beyond debate that such right was allegedly violated.[267] "The burden is on the plaintiff to overcome a defendant's defense of qualified immunity" by showing the violation of clearly established law.[268] Because the defense of qualified immunity is a "demanding standard" that "protects all but the plainly incompetent or those who knowingly violate the law," qualified immunity is the "norm, and courts should deny a defendant immunity only in rare circumstances."[269]

**Qualified Immunity with Respect to Individual Jailer Defendants**

With these legal standards in mind, the individual state Defendants Alex Garcia, Crecencio Galvan, Evelario Garza, Clyde Guerra, Hector Lopez, and Sheriff Rene "Orta" Fuentes state plainly that "[a]s stated before, the Plaintiffs' Complaint simply does not state sufficient facts to overcome Defendant's entitlement to Qualified Immunity."[270] Defendants Sammy Marroquin's and Raul Garcia's motions to dismiss add, "[t]here is no allegation that, if

---

[264] *Sanchez*, 139 F.3d at 466–67 (citations omitted).
[265] *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (quotation omitted), *cert. denied*, 140 S. Ct. 388 (2019).
[266] *Id.* (quoting *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018)).
[267] *Garcia v. Blevins*, No. 19-20494, 2020 WL 2078391, at *3 (5th Cir. Apr. 30, 2020).
[268] *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994).
[269] *Rich*, 920 F.3d at 294 (quotations omitted).
[270] Dkt. Nos. 125–130.

true, shows a violation of the constitution or federal law. There likewise is no allegation that [the Defendant] violated clearly established law or that he behaved in a way that no reasonable officer could have seen as appropriate. Therefore, [Defendants are] entitled to qualified immunity . . . ."[271] Plaintiffs disagree, and argue that "Starr County deputies had a duty to provide adequate medical care and protection from harm to Mr. Muñoz."[272] Many of the cases Plaintiffs cite to establish this duty, however, concern the Eighth Amendment.[273] This is likely because Eighth Amendment precedents offer more judicial guidance to prisoners' rights than other precedents do for detainees.[274] As previously discussed, this Court considers "a person detained for deportation to be the equivalent of a pretrial detainee; a pretrial detainee's constitutional claims are considered under the due process clause instead of the Eighth Amendment."[275] Accordingly, no Eighth Amendment case can "clearly establish" Mr. Muñoz's right that was allegedly violated.[276] With respect to the right at issue, Defendants point out[277] that "[n]o decision of th[e Supreme] Court establishes a right to the proper implementation of adequate suicide prevention protocols. No decision of th[e Supreme] Court even discusses suicide screening or prevention protocols."[278]

---

[271] Dkt. No.  142–143.

[272] Dkt. No. 134 at 19, ¶ 44.

[273] *See, e.g.*, Dkt. No. 146 at 10–12, ¶¶ 27–34 (citing *Gobert v. Caldwell*, 463 F.3d 339 (5th Cir. 2006); *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006); *Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003); *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752 (5th Cir. 2001); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999)).

[274] *Cf. Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2017) (internal quotation marks and citation omitted) ("The [Supreme] Court has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—deliberate indifference to serious medical needs. The standard for a claim alleging that a warden allowed guards to abuse pre-trial detainees is less clear under the Court's precedents.").

[275] *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000).

[276] *See Rroku v. Cole*, 726 F. App'x 201, 206 (5th Cir. 2018) (holding that even "markedly similar claims brought under different amendments should not automatically be considered analogous").

[277] Dkt. No. 150 at 11, ¶ 22.

[278] *Taylor v. Barkes*, 575 U.S. 822, 135 S. Ct. 2042, 2044 (2015) (per curiam).

Nevertheless, Plaintiffs are correct[279] that "the law is clearly established that jailers must take measures to prevent [pretrial detainee] suicides once they know of the suicide risk," although the Fifth Circuit "cannot say that the law is established with any clarity as to what those measures must be."[280] Broadly, "[t]he constitutional violation alleged here stems from the Due Process clause of the Fourteenth Amendment, under which a 'pretrial detainee ... ha[s] a clearly established ... right not to be denied, by deliberate indifference, attention to his serious medical needs.' This right includes protection from known suicidal tendencies."[281] Accordingly, the Court finds, under the second prong of the qualified immunity test, that Mr. Muñoz's right to protection from suicide was clearly established on May 13, 2018. The question remains whether Plaintiffs have adequately alleged violation of Mr. Muñoz's constitutional right.

Pretrial detainees have the right not to be denied attention to medical needs by deliberate indifference.[282] "To prove deliberate indifference, a pretrial detainee must show that the state official [1] knew of and [2] disregarded an excessive risk to the inmate's health or safety."[283] This "deliberate indifference" standard requires more than negligence or oversight; "to defeat qualified immunity, the plaintiffs must establish that the officers . . . were aware of a substantial and significant risk [of suicide], but effectively disregarded it."[284] "Deliberate indifference is an extremely high standard to meet."[285] "Deliberate indifference requires a showing of more

---

[279] *See* Dkt. No. 146 at 13, ¶ 36–37.
[280] *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 394–95 (5th Cir. 2000) (quoting *Hare v. City of Corinth*, 135 F.3d 320, 328–29 (5th Cir. 1998); *accord Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc) (recognizing a duty to assume responsibility for the safety of pretrial detainees and adding "[t]he State's obligation to prevent suicide may implicate a kaleidoscope of related duties, including a duty to provide not only medical care, but also protection from self-inflicted harm").
[281] *Estate of Pollard v. Hood Cty.*, 579 F. App'x 260, 264–65 (5th Cir. 2014) (alterations and omissions in original) (quoting *Flores v. Cty. of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997)).
[282] *See supra* note 281 and accompanying text.
[283] *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001), *quoted in Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008). Worded differently, the standard is "whether [jailers] had gained actual knowledge of the substantial risk of suicide and responded with deliberate indifference." *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996).
[284] *Jacobs*, 228 F.3d at 395.
[285] *Calton v. Livingston*, 478 F. App'x 77, 79 (5th Cir. 2012) (quotation omitted).

than . . . even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."[286] Furthermore, "it is well established that an officer's failure to follow prison rules, standing alone, does not warrant relief under 42 U.S.C. § 1983. To prevail, a civil rights plaintiff must demonstrate a constitutional violation."[287] However, "[t]o be sure, a knowing failure to execute policies necessary to an inmate's safety may be evidence of an officer's deliberate indifference."[288]

Plaintiffs assert that the Second Amended Complaint "provably alleges that (1) Starr County refused to provide an adequate system of suicide screening and medical care with mental health services for pretrial detainees at risk of suicide, and (2) the County had a policy or practice of holding at-risk suicidal pre-trial detainees in dangerous cells without Texas-mandated monitoring."[289] Plaintiffs' reply in support of their motion for leave to file the Third Amended Complaint relies on this same argument.[290] The Court will summarize Plaintiffs' allegations in the proposed Third Amended Complaint to assess whether Plaintiffs state a plausible claim that Starr County jailers reacted to Mr. Muñoz's medical needs with deliberate indifference, which would disentitle those jailers to immunity.

---

[286] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (internal quotation marks and footnotes omitted).

[287] *Calton v. Livingston*, No. CIV.A. H-09-2507, 2011 WL 2118700, at *12 (S.D. Tex. May 27, 2011) (Atlas, J.) (citations omitted), *aff'd,* 478 F. App'x 77 (5th Cir. 2012).

[288] *Arenas v. Calhoun*, 922 F.3d 616, 624 (5th Cir. 2019).

[289] Dkt. No. 134 at 9, ¶ 15.

[290] Dkt. No. 152 at 5, ¶ 12 (citing Dkt. No. 134) ("For the reasons discussed at length in Ms. Peña Arita's Response to Starr County Defendants' motion to dismiss, Ms. Peña Arita's Second Amended Complaint plausibly alleges that the Starr County defendants are liable for Mr. Muñoz's preventable death. Ms. Peña Arita's proposed Third Amended Complaint, which simply contains additional facts regarding individual defendants, likewise states a valid claim for relief.").

The Court shall analyze each jailer Defendants' conduct to assess whether qualified immunity attaches.[291] In Plaintiffs' proposed Third Amended Complaint, with respect to the conduct of the jailer Defendants, Plaintiffs allege that, upon booking Mr. Muñoz, Starr County Jail officials knew that Mr. Muñoz "was assaultive, potentially suicidal, mentally ill, and/or had demonstrated bizarre behavior."[292] Defendants Hector Lopez, Crecencio Galvan, and Clyde Guerra took custody of Mr. Muñoz when he was "agitated and erratic."[293] Defendant Crecencio Galvan called Mr. Muñoz a "rowdy" or aggressive detainee upon receiving him,[294] and "Defendant Galvan" knew that Mr. Muñoz "was not thinking straight" and had alleged that CBP officers killed his family.[295] Defendant Hector Lopez knew that CBP failed to deliver medical clearance paperwork with Mr. Muñoz and Defendant CBP Agent Jorge Flores specifically advised Hector Lopez and Raul Garcia of Mr. Muñoz's allegedly faked seizure "and that Mr. Muñoz had accused CBP agents of killing his wife and children."[296] Defendants Hector Lopez and "Galvan" processed Mr. Muñoz's booking and observed Mr. Muñoz "bec[o]me frantic" and start ripping up documents that Mr. Muñoz believed were a precursor to killing him.[297] Defendants Hector Lopez and "Galvan" grabbed Mr. Muñoz's arm during a struggle and forced him into a "'detox' padded cell," where Hector Lopez observed Mr. Muñoz hit himself against a window in the cell and state that Defendants Hector Lopez and "Galvan" were trying to kill him.[298] Defendants "Lopez and Galvan" also permitted Mr. Muñoz to keep his clothes in the padded cell.[299] "Defendant Galvan" completed the booking process after Hector Lopez departed,

---

[291] *See supra* note 258.
[292] Dkt. No. 144-1 at 16, ¶ 95.
[293] *Id.* ¶ 96.
[294] *Id.* ¶ 95.
[295] *Id.* at 17, ¶ 102.
[296] *Id.* at 16–17, ¶ 99.
[297] *Id.* at 18, ¶ 107.
[298] *Id.* at 17–18, ¶¶ 105–109.
[299] *Id.* at 18, ¶ 111.

during which Defendant Galvan noted that Mr. Muñoz insisted that "Starr County jailers" had killed his family and insisted on shaking hands with every jailer.[300] Defendant Galvan placed Mr. Muñoz back in the padded cell in Mr. Muñoz's civilian clothes.[301] All jailers permitted Mr. Muñoz to keep his civilian clothes.[302]

While Mr. Muñoz was detained in Starr County Jail, Defendant Evelario Garza learned of Mr. Muñoz's interactions with the booking officers and belief that Starr County officials had killed Mr. Muñoz's family.[303] Defendant Evelario Garza believed he was responsible for checking the feed from the camera observing Mr. Muñoz's cell.[304] Defendant Sammy Marroquin believed he was responsible for physically checking Mr. Muñoz.[305] Defendants Sammy Marroquin and Alex Garcia spoke to and checked on Mr. Muñoz three times between 8:00 and 10:00 a.m. on May 13, 2018.[306] However, Defendant Sammy Marroquin stated in a report of the incident that "he did not check on Mr. Muñoz at all until around 10:00 am."[307]

Plaintiffs allege that, having observed Mr. Muñoz's distraught behavior, "Starr County detention officers knew or should have known that Mr. Muñoz posed a danger to himself or others" yet failed to seek psychiatric care.[308] Plaintiffs allege that Starr County jailers failed to comply with Texas Commission on Jail Standards regulations requiring face-to-face checks of Mr. Muñoz every 30 minutes[309] and failed to systematically monitor the cameras surveying Mr.

---

[300] *Id.* at 19, ¶ 114.
[301] *Id.* ¶ 115.
[302] *Id.* ¶ 116.
[303] *Id.* at 20, ¶¶ 121–122.
[304] *Id.* ¶ 123.
[305] *Id.* at 22, ¶ 130.
[306] *Id.* ¶ 131.
[307] *Id.* ¶ 132.
[308] *Id.* at 19, ¶¶ 112–113.
[309] *See* 37 TEX. ADMIN. CODE § 275.1 (2018).

Muñoz's cell.[310] While not being observed or visited, Mr. Muñoz asphyxiated himself with the sweater and was not found until approximately 40 minutes after his death.[311]

The Court holds that none of these allegations overcome the jailer Defendants' qualified immunity and that Plaintiffs have failed to carry their burden to defeat qualified immunity. "Anger, hostility, and belligerence are not uncommon displays of conduct by pretrial detainees or other persons held in custody."[312] The mere fact that a detainee is hostile, belligerent, distraught, or erratic and is placed in a jail cell in which it is possible for the detainee to commit suicide is insufficient to establish the requisite "deliberate indifference" standard.[313] Although the Court acknowledges that Mr. Muñoz's behavior as alleged was bizarre and clearly troubled, the Court is unable to say, assuming all of Plaintiffs' allegations are true and drawing all reasonable inferences in Plaintiffs' favor, that at any point any one Starr County jailer became aware of a significant risk of Mr. Muñoz's suicide. Plaintiffs do not allege that Mr. Muñoz threatened suicide, talked about killing himself, expressed that he was depressed, or indicated, as Plaintiffs assert, "multiple suicide risk factors."[314] The only allegation that comes close is Plaintiffs' allegation that "Starr County officers knew that Mr. Muñoz was assaultive, potentially suicidal, mentally ill, and/or had demonstrated bizarre behavior."[315] However, this allegation does not identify any one jailer and is conclusory. When the conduct of each jailor is segregated as to that jailor, the allegations simply fail to show that that jailer knew of and disregarded the risk of suicide. The Court cannot use the benefit of hindsight, in light of the fact that Mr. Muñoz

---

[310] Dkt. No. 144-1 at 20–24, ¶¶ 118–147.
[311] *Id.*
[312] *Posey v. Sw. Bell Tel. L.P.*, 430 F. Supp. 2d 616, 623 (N.D. Tex. 2006).
[313] *See id.*
[314] Dkt. No. 134 at 16, ¶ 34.
[315] Dkt. No. 144-1 at 16, ¶ 95.

did commit suicide, to establish that his distraught behavior in the approximate 24-hour period[316] that he was in the custody of Starr County jailers was a prelude to suicide.[317]

The Court's holding is consistent with Fifth Circuit precedent. In *Branton v. City of Moss Point*, the Fifth Circuit dealt with a pretrial detainee who, upon being cited for the crime of driving under the influence, commented that he would lose everything, punched a hole in a wall, fought with police officers, and remarked that his life was over and he might as well be shot.[318] The Fifth Circuit held that, even though state authorities were aware of this behavior and left the individual detainee alone in a jail cell for two hours where he eventually killed himself by hanging, the authorities did not have "actual knowledge of a substantial risk of suicide."[319] Moreover, in a different case, the Fifth Circuit held that jailers' failure to comply with strict fifteen-minute-interval observation orders and neglecting to remove a laundry bag from a cell "did not reflect deliberate indifference to [an inmate's] *known* suicide risk."[320] These cases involve allegations that authorities were more aware of a potential risk of suicide, but their failures to prevent suicide did not amount to deliberate indifference. The Court agrees with Defendants that the allegations in Plaintiffs' proposed Third Amended Complaint fall short of alleging deliberate indifference, and therefore fail to make out a violation of a constitutional right under the first prong of the qualified immunity test.[321] Accordingly, the Court **GRANTS** the individual State Defendants' motions to dismiss[322] and **DENIES** Plaintiffs' motion to amend[323]

---

[316] Plaintiffs' allegations are unclear regarding how long Mr. Muñoz was in the custody of respective Defendants.

[317] *See Arebalo v. Swisher Cty.*, No. 2:13-CV-082-J, 2013 WL 4475606, at *2 (N.D. Tex. Aug. 21, 2013) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989) & *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012)) ("Claims of qualified immunity are not judged on twenty-twenty hindsight, or in light of knowledge ascertained after an event, but by looking through the eyes of the public official, considering what that official knew about the situation at the relevant time.").

[318] 261 F. App'x 659 (5th Cir. 2008).

[319] *Id.* at 661.

[320] *Estate of Pollard v. Hood Cty.*, 579 F. App'x 260, 265 (5th Cir. 2014) (emphasis added).

[321] *See* Dkt. No. 149 at 9 & Dkt. No. 150 at 10, ¶¶ 20–21.

[322] Dkt. Nos. 125, 126, 127, 128, 129, 142, and 143.

to the extent Plaintiffs would attempt to allege 42 U.S.C. § 1983 claims against the individual State Defendants. Plaintiffs' claims under 42 U.S.C. § 1983 with respect to Alex Garcia, Crecencio Galvan, Evelario Garza, Clyde Guerra, Hector Lopez, Sammy Marroquin, and Raul Garcia are **DISMISSED WITH PREJUDICE**.

**Liability with Respect to Defendants Sheriff Rene "Orta" Fuentes and Starr County, Texas**

Plaintiffs allege in the proposed Third Amended Complaint that "Defendant Rene 'Orta' Fuentes is the duly elected Starr County Sheriff, and served in this position at all relevant times. He is sued in his official capacity."[324] Plaintiffs also allege, "Starr County Sheriff, Rene 'Orta' Fuentes, is and at all relevant times was responsible for setting policy and directing customs at the Starr County Jail. Sheriff Fuentes had actual or constructive knowledge that the Starr County Jail was not adequately monitoring detainees and failing to provide a suicide-safe environment."[325] Defendant Fuentes moves to dismiss any claim of supervisory liability against him.[326] In both the Second and Third Amended Complaint, Plaintiffs are suing Defendant Fuentes in his official capacity only.[327] Accordingly, Plaintiffs' claims against Defendant Fuentes in his official capacity are claims against Starr County, not claims against the individual Sheriff.[328] The Court therefore considers Defendant Fuentes's and Starr County's motions and arguments together.[329]

With respect to Defendant Starr County, Plaintiffs allege in the proposed Third Amended Complaint:

---

[323] Dkt. No. 144.

[324] Dkt. No. 144-1 at 6, ¶ 23.

[325] *Id.* at 32, ¶ 199.

[326] Dkt. No. 130 at 3–4.

[327] Dkt. No. 134 at 18, ¶ 40 (""Plaintiffs do not seek to hold Sheriff Fuentes responsible for Mr. Muñoz's death under a theory of supervisory liability. Instead, Plaintiffs named Sheriff Fuentes in his official capacity in a suit against his office, alleging sufficient facts to show that he is the final policymaker for Starr County Jail.").

[328] *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[329] Dkt. Nos. 130–131, 149.

197. Defendant County of Starr, Texas, had, or has, a custom of failing to adequately monitor inmates at risk of self-harm, including in contravention of binding regulations promulgated by the Texas Commission on Jail Standards.

198. Starr County was deliberately indifferent to, and allowed to continue, the persistent, widespread custom of inadequately monitoring and providing care to detainees. Starr County failed to supervise, investigate, or discipline officers for fostering a high-risk environment for suicide, such as monitoring detainees at irregular intervals and routinely altering the monitoring logs.[330]

Starr County seeks to dismiss any claim against it for municipal liability.[331] Plaintiffs oppose dismissal.[332] The parties maintain their arguments in response to Plaintiffs' motion for leave to file the Third Amended Complaint.[333]

Here, the Court assumes that Defendant Fuentes is the official policymaking authority for Starr County with respect to its jail standards and operating procedures.[334] Therefore, because Plaintiffs' claims against Defendant Fuentes in his official capacity are the same as claims against Starr County, "municipal liability under section 1983 requires proof of three elements: (1) a policymaker [here, Defendant Fuentes]; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom."[335] "*Respondeat superior* or vicarious liability will not attach under § 1983."[336] Therefore, the "unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur."[337] Isolated or random unconstitutional actions, even by official municipal employees, will seldom trigger policy liability.[338] Also, there are two forms of "official policy," which are (1) formal policies announced via official channels, and (2) "a 'persistent widespread practice of city

---

[330] Dkt. No. 144-1 at 32, ¶¶ 197–198.

[331] Dkt. No. 131 at 3–4.

[332] Dkt. No. 134 at 14, 17.

[333] Dkt. No. 149 at 12–13; Dkt. No. 152 at 5, ¶ 12.

[334] *See Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir.), *cert. denied*, 140 S. Ct. 651 (2019) ("We have previously found that Texas police chiefs are final policymakers for their municipalities, and it has often not been a disputed issue in the cases.").

[335] *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012) (alteration in original) (quotation omitted).

[336] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

[337] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

[338] *Id.*

officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'"[339] There is, however, a high bar to prove an official custom:

> Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. It is thus clear that a plaintiff must demonstrate a pattern of abuses that transcends the error made in a single case. A pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question. A pattern also requires sufficiently numerous prior incidents, as opposed to isolated instances.[340]

The official policymaker must be chargeable with actual or constructive knowledge of the custom to hold the municipality liable.[341] Lastly, the third element requires "a direct causal link between the municipal policy and the constitutional deprivation," or a substantial demonstration that the policy or custom is the "moving force" behind the constitutional violation.[342]

The Court must begin by "deciding whether to classify the "challenge as an attack on a 'condition of confinement' or as an 'episodic act or omission.'"[343] 'Constitutional attacks on general conditions, practices, rules, or restrictions of pretrial confinement are referred to as 'jail condition cases.'"[344] On the other hand, a claim based on particular acts or omissions by one or more jail officials is referred to as an episodic acts or omissions claim.[345] Plaintiffs argue that they can satisfy both standards.[346] A plaintiff is entitled to bring both claims as alternative

---

[339] *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

[340] *Peterson v. City of Fort Worth*, 588 F.3d 838, 850–51 (5th Cir. 2009) (alteration deleted) (internal quotation marks and citations omitted).

[341] *Okon v. Harris Cty. Hosp. Dist.*, 426 F. App'x 312, 316 (5th Cir. 2011).

[342] *Piotrowski*, 237 F.3d at 580.

[343] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)).

[344] *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996).

[345] *Id.* at 645.

[346] Dkt. No. 134 at 11, ¶ 19 n.3.

theories of liability.[347] The Court is to evaluate each claim separately,[348] and will begin with the episodic acts-or-omissions claim because the Court "employ[s] different standards depending on whether the liability of the individual defendant or the municipal defendant is at issue."[349] "To establish municipal liability in an episodic-act case, a plaintiff must show '(1) that the municipal employee[s] [here, jailers] violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference.'"[350] To show "subjective deliberate indifference" under the first prong, "a plaintiff must show that public officers were [1] aware of facts from which an inference of a substantial risk of serious harm to an individual could be drawn; [2] that they actually drew the inference."[351] To show "objective deliberate indifference" under the second prong, the applicable custom or policy or training must have been so obviously inadequate and, due to its inadequacy, so likely to result in a violation of constitutional rights "that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[352] "It must be obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights."[353] "While the municipal policy-maker's failure to adopt a precaution can be the basis for § 1983 liability, such omission must amount to an intentional choice, not merely an unintentionally negligent oversight."[354]

[347] *Garza v. City of Donna*, 922 F.3d 626, 633 n.3 (5th Cir.), *cert. denied*, 140 S. Ct. 651 (2019).

[348] *Estate of Henson v. Wichita Cty.*, 795 F.3d 456, 464 (5th Cir. 2015).

[349] *Olabisiomotosho*, 185 F.3d at 526 (citing *Hare v. City of Corinth*, 74 F.3d 633, 649 n.4 (5th Cir. 1996)).

[350] *Garza*, 922 F.3d at 634 (quoting *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)).

[351] *Id.* (alterations in original); *see also Olabisiomotosho*, 185 F.3d at 526 (quotation omitted) ("Subjective deliberate indifference means the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.").

[352] *Farmer v. Brennan*, 511 U.S. 825, 840–41 (1994) (quotation omitted), *quoted in Hare v. City of Corinth*, 74 F.3d 633, 649 n.4 (5th Cir. 1996).

[353] *Brown v. Callahan*, 623 F.3d 249, 257 (5th Cir. 2010) (quotation omitted).

[354] *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992).

The Court has addressed the first prong in the preceding section and has found it to be lacking. Nonetheless, the Court considers the second prong—the existence of a policy or custom. Plaintiffs argue that they have alleged "a 'pattern of violations' stemming from a failure to train or supervise: (a) Starr County [officers] regularly violated the Texas regulations' requirement of face-to-face checks every thirty minutes; (b) Starr County [officers] routinely falsified records to appear in compliance with Texas regulations; and (c) no supervisor had ever punished these breaches of Texas regulations. [Officers] were never supervised, investigated, or disciplined for deviating from basic State regulations or for falsifying logs."[355] Plaintiffs allege that applicable jail standards required checks on Mr. Muñoz at least every 30 minutes, but that jailers falsified the logs to make it appear that such checks were being done.[356] Therefore, the necessary inference is that the policymaker, Defendant Fuentes, was being misled to believe that the 30-minute checks were being diligently accomplished. Far from alleging that Defendant Fuentes was aware of "facts from which an inference of a substantial risk of serious harm to an individual could be drawn,"[357] Plaintiffs suggest that Defendant Fuentes was not made aware of such facts. Without more, Defendant Fuentes's failure to interrogate his jailers or otherwise investigate the veracity of jail observation records does not amount to deliberate indifference of detainees' constitutional rights.[358] Even if Defendant Fuentes was negligent in ensuring the detainee checks were being accomplished, such failure cannot amount to deliberate indifference.[359] Plaintiffs further allege that "[a] May 2018 Texas Commission on Jail Standards review of the Starr County Jail's compliance with this [observation] regulation around the time of Mr. Muñoz's

---

[355] Dkt. No. 134 at 15, ¶ 33. Failure-to-train claims are predicated on the same "deliberate indifference" standard as used in episodic-act-or-omission claims, so the Court's holding is the same under either theory of liability. *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

[356] Dkt. No. 144-1 at 21, ¶ 127.

[357] *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir.), *cert. denied*, 140 S. Ct. 651 (2019).

[358] *See Coon v. Ledbetter*, 780 F.2d 1158, 1162 (5th Cir. 1986) (holding that, where a sheriff accepted his subordinates' version of what transpired, the defense of such conduct does not amount to policy liability).

[359] *See supra* notes 351–354 and accompanying text.

death found that the Jail was not in compliance, with checks taking place as much as 169 minutes apart."[360] But Plaintiffs conveniently omit that this report is dated May 30, 2018, and could not have provided notice to any policymaker of the Starr County Jail's noncompliance until after Mr. Muñoz's death.[361]

To save their claim, Plaintiffs argue that "[t]he patterns shown in this incident represent a pervasive culture of deliberate indifference to suicide prevention."[362] Recognizing that the 2-day period described in Plaintiffs' proposed Third Amended Complaint is unlikely to establish a pervasive pattern,[363] Plaintiffs cite to *Grandstaff v. City of Borger*,[364] where the Fifth Circuit found from an incident of "repeated acts of abuse on [one] night,"[365] culminating in all officers of one municipal police department firing at an innocent motorist, "so gross an abuse of the use of deadly weapons" and such "incompetent and catastrophic performance," that, where the City policymaker failed to discipline after the conduct at issue, the incident was "sufficient to show an official policy of condoning such abuses."[366] Plaintiffs invoke this precedent in light of their allegation that "Starr County failed to supervise, investigate, or discipline officers for fostering a high-risk environment for suicide, such as monitoring detainees at irregular intervals and routinely altering the monitoring logs."[367] The Court finds this argument lacking. Although the *Grandstaff* precedent has not been overruled and is good law, the case "has not enjoyed wide

---

[360] Dkt. No. 144-1 at 21, ¶ 126.
[361] TEX. COMM'N ON JAIL STANDARDS, SPECIAL INSPECTION REPORT (May 30, 2018),
https://www.texasjailproject.org/wp-content/uploads/2019/12/TCJS-Non-compliant-Starr_Special_NC_5-30-2018.pdf; *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (holding that courts may take judicial notice of public records).
[362] Dkt. No. 134 at 15, ¶ 34.
[363] *See Fuentes v. Nueces Cty.*, 689 F. App'x 775, 778 (5th Cir. 2017) (citations omitted) ("Although there is no rigid rule regarding numerosity, we have previously held that 27 prior incidents of excessive force over a three-year period and 11 incidents offering 'equivocal evidence' of unconstitutional searches over a three-year period were not sufficiently numerous to constitute a pattern.").
[364] 767 F.2d 161 (5th Cir. 1985).
[365] *Id.* at 171.
[366] *Fuentes*, 689 F. App'x at 779 (quoting *Grandstaff*, 767 F.2d 161 *passim*).
[367] Dkt. No. 144-1 at 32, ¶ 198.

application in our circuit. We have limited its ratification theory to extreme factual situations."[368]
"[U]nless the subordinate's actions are sufficiently extreme—for instance, an obvious violation
of clearly established law—a policymaker's ratification or defense of his subordinate's actions is
insufficient to establish an official policy or custom."[369] In other words, *Grandstaff*
"does *not* stand for the broad proposition that if a policymaker defends his subordinates and if
those subordinates are later found to have broken the law, then the illegal behavior can be
assumed to have resulted from an official policy."[370]

The Court holds that Plaintiffs' allegations that unidentified Starr County jail employees
falsified detainee observation logs[371] simply does not represent the "extreme factual situation" to
conclude that Defendant Sheriff Fuentes has an official policy of condoning noncompliant
detainee observation.[372] "Unlike *Grandstaff*, this case does not involve the collective conduct of
many individuals and multiple bad acts but rather" the failures of a few jailers to properly
observe a detainee, which is not so "incompetent and catastrophic [a] performance as that of the
officers in *Grandstaff*."[373] The Court emphasizes the severity of the conduct at issue in
*Grandstaff*—police officers knew an innocent bystander might be in the truck and, "without
awaiting any hostile act or sound . . . poured their gunfire at the truck and into the person of
James Grandstaff. They showed no inclination to avoid inflicting unnecessary harm upon
innocent people. They simply saw a target and fired."[374]—as compared to the allegations in this
case: "Defendants did not check on Mr. Muñoz every 30-minutes as required by applicable

---

[368] *Barkley v. Dillard Dep't Stores, Inc.*, 277 F. App'x 406, 413 (5th Cir. 2008).
[369] *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009).
[370] *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986).
[371] *See* Dkt. No. 144-1 at 21–22, ¶¶ 126–132.
[372] *See Coon*, 780 F.2d at 1161 ("The *Grandstaff* panel emphasized the extraordinary facts of the case, and its analysis can be applied only to equally extreme factual situations.").
[373] *Fuentes v. Nueces Cty.*, 689 F. App'x 775, 779 (5th Cir. 2017) (quotation omitted).
[374] *Grandstaff v. City of Borger*, 767 F.2d 161, 167–68 (5th Cir. 1985).

standards, and later falsified the logs to make it appear as if they had."[375] Though this Court would not condone failures to comply with minimal standards for detainee observation and prevarications thereof, the Court holds that the allegations in this case do not show "repeated acts of abuse on [these days], by several officers in several episodes, tending to prove a disposition to disregard human life and safety so prevalent as to be police policy or custom."[376]

In a final effort to save their episodic-act-or-omission claim, Plaintiffs argue that "[e]mploying only meager measures that [jailers and municipalities] know or should know to be ineffectual amounts to deliberate indifference."[377] This argument requires some explication. Plaintiffs invoke Judge Goldberg's special concurrence in *Rhyne v. Henderson County*. In *Rhyne*, the Fifth Circuit panel majority held, affirming the District Court's judgment as a matter of law, that state officials were not deliberately indifferent under 42 U.S.C. § 1983 to a jail suicide.[378] Judge Goldberg concurred that plaintiff did not sustain her burden, but wrote separately that

> What we learn from the experiences of Henderson County is that when jailers know a detainee is prone to committing suicide, a policy of observing such a detainee on a periodic, rather than on a continuous, basis, will not suffice. . . . Jailers and municipalities beware! Suicide is a real threat in the custodial environment. Showing some concern for those in custody, by taking limited steps to protect them, will not pass muster unless the strides taken to deal with the risk are calculated to work: Employing only meager measures that jailers and municipalities know or should know to be ineffectual amounts to deliberate indifference. To sit idly by now and await another, or even the first, fatality, in the face of the Henderson County tragedy, would surely amount to *deliberate* indifference.[379]

The Fifth Circuit partly acknowledges this reasoning, and recently held that "America faces an epidemic of suicide by individuals in custody. . . . It is clear that more can and must be done to

---

[375] Dkt. No. 144-1 at 21, ¶ 127.
[376] *Grandstaff.*, 767 F.2d at 171.
[377] Dkt. No. 134 at 15, ¶ 32 (second alteration in original) (quoting *Estate of Schroeder v. Gillespie Cty.*, 23 F. Supp. 3d 775, 788 (W.D. Tex. 2014) (Sparks, J.)).
[378] 973 F.2d 386 (5th Cir. 1992).
[379] *Id.* at 396 (Goldberg, J., concurring) (alteration deleted) (quotation omitted).

address suicides in prisons and jails."[380] Plaintiffs rely on Judge Goldberg's 1992 concurrence to assert that Defendant Fuentes's policy in this case, even if compliant with Texas Commission on Jail Standards regulations calling for periodic observation, was the type of "meager measure" that reflects deliberate indifference to detainee suicide. But even if the Court were to grant consideration to Judge Goldberg's concurrence as if it carried controlling precedential weight, Plaintiffs' argument would be insufficient. Critically, Plaintiffs' only allegation that the Starr County jail standards is an insufficient or a "meager measure" is that the "Texas Commission on Jail Standards regulations represent a minimum standard that may not be appropriate in circumstances where, as in Mr. Muñoz's, more frequent supervision is needed."[381] The Court finds Plaintiffs' argument flawed, because Plaintiffs only allege that more frequent supervision than Defendant Fuentes had in place "*may not* be appropriate," but point to no allegation or evidence that the Starr County Jail policy was a "meager measure" that Defendant Fuentes should have known would be ineffectual.[382] Even if Plaintiffs had alleged that the Starr County Jail policy was an ineffectual or meager measure that reflected deliberate indifference, such allegation would be conclusory and not entitled to any weight.[383] The Court holds that Plaintiffs have failed to establish subjective deliberate indifference on the part of the municipal employee jailers under the first prong of the test for all the reasons elaborated in this and the previous Section.[384]

The Court now turns to Plaintiffs' conditions of confinement claim,[385] which is an alternative theory of policymaker liability that the Court evaluates independently.[386] Where a

---

[380] *Hyatt v. Thomas*, 843 F.3d 172, 180 (5th Cir. 2016).
[381] Dkt. No. 144-1 at 20, ¶ 120.
[382] *See Rhyne*, 973 F.2d at 393 (holding that, where the plaintiff made no showing that the jail standards were "obviously inadequate," there was no jury question to be resolved).
[383] *See supra* notes 72–73 and accompanying text.
[384] See *infra* text accompanying notes 396–401 for a discussion of the second prong of the test.
[385] *See* Dkt. No. 134 at 9, ¶ 15 (citing Dkt. No. 61 at 15–16, ¶¶ 75–84).

plaintiff makes a conditions-of-confinement claim, the plaintiff is making a constitutional attack "on general conditions, practices, rules, or restrictions of pretrial confinement" such as the number of bunks in a cell or a detainee's access to mail.[387] "This court evaluates pretrial detainees' constitutional complaints of Fourteenth Amendment violations [of jail conditions] under . . . *Bell v. Wolfish* to determine '[i]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective.'"[388]

> In a case challenging conditions of confinement, the proper inquiry is whether those conditions amount to punishment of the detainee. If a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. [The Fifth Circuit] has said that a condition may take the form of "a rule," a "restriction," "an identifiable intended condition or practice," or "acts or omissions" by a jail official that are "sufficiently extended or pervasive." Per *Bell*, such condition must be "not reasonably related to a legitimate governmental objective" and must cause the inmate's constitutional deprivation.[389]

"If the plaintiff has properly stated a claim as an attack on conditions of confinement, he is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish" because intent can be inferred from the unconstitutional condition.[390] As an example, one plaintiff successfully brought a conditions-of-confinement claim over a "bizarrely high incidence of MRSA," an infectious disease, at a county jail.[391] However, the unconstitutional confinement conditions must amount to more than *de minimis* violations: "[I]solated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate. . . . Rather, a detainee challenging jail

---

[386] *See supra* notes 343–349 and accompanying text.
[387] *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc) (quotation omitted).
[388] *Campos v. Webb Cty.*, 597 F. App'x 787, 791 (5th Cir. 2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)).
[389] *Garza v. City of Donna*, 922 F.3d 626, 632–33 (5th Cir.) (alteration, citations, and some internal quotation marks omitted), *cert. denied*, 140 S. Ct. 651 (2019).
[390] *Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009).
[391] *Duvall v. Dallas Cty.*, 631 F.3d 203 (5th Cir. 2011).

conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs."[392]

The Court holds that Plaintiffs conditions-of-confinement claim fails for a simple reason. Plaintiffs pin their claim on the alleged conditions of Mr. Muñoz's cell, the failure of suicide oversight or prevention measures, and the failure to provide mental healthcare to Mr. Muñoz.[393] However, these are essentially episodic allegations. Plaintiffs do not allege any pervasive pattern or "continuing burden on inmate life."[394] Even assuming the truth of all of Plaintiffs' allegations, the failures are particularized to Mr. Muñoz. Plaintiffs do not allege any other suicide at Starr County Jail or any other showing of systematic or patterned failures. As in the Fifth Circuit *Garza* case, Plaintiffs' attempt to allege a conditions-of-confinement claim "is an effort to fit a square peg into a round hole. Prior conditions cases have concerned *durable restraints* or impositions on inmates' lives like overcrowding, deprivation of phone or mail privileges, the use of disciplinary segregation, or excessive heat."[395] The Court does not find any such durable condition alleged here.

The Court's holding with respect to Plaintiff's conditions of confinement claim also illuminates the Court's holding with respect to Plaintiff's episodic acts or omissions claim. Even if Plaintiffs could show "subjective deliberate indifference" under the first prong of the episodic act or omission test, the Court would hold for the reasons elaborated above that Plaintiffs cannot establish a municipal policy or custom maintained with objective deliberate indifference under the second prong of the test. Plaintiffs argue that they have alleged the Starr County Jail's

---

[392] *Id.* at 208 (quoting *Shepherd v. Dallas Cty.*, 591 F.3d 445, 454 (5th Cir. 2009)).
[393] Dkt. No. 134 at 9–10, ¶¶ 16–17.
[394] *Garza*, 922 F.3d at 634.
[395] *Id.* at 633–34 (emphasis added).

official custom "of having infrequent and irregular face-to-face checks,"[396] but Plaintiffs rely on the same allegations that the Court has already detailed and held are insufficient to state a claim.[397] Plaintiffs only add that a Court may consider the "totality of conditions" in recognizing that several contributing factors or policies may have led to a particular violation.[398] Although the Court acknowledges that it "may properly consider how individual policies or practices interact with one another within the larger system,"[399] Plaintiffs argument suffers from the fatal flaw that Plaintiffs have not alleged numerous prior incidences or any pattern of abuses that could establish an official policy or custom.[400] Whatever the failings alleged of the Starr County Jail, they are episodic and particularized to Mr. Muñoz; they do not "demonstrate 'a pattern of abuses that transcends the error made in a single case.'"[401]

Accordingly, the Court finds that Plaintiffs have failed to state a claim against Defendant Sheriff Rene "Orta" Fuentes or Defendant Starr County, Texas under 42 U.S.C. § 1983. The Court **GRANTS** Defendant Fuentes's motion to dismiss[402] and **GRANTS** Starr County's motion to dismiss.[403] The Court **DENIES** Plaintiffs' motion to amend[404] to the extent Plaintiffs would attempt to allege § 1983 claims against Defendants Fuentes or Starr County. Plaintiffs' claims under 42 U.S.C. § 1983 with respect to Defendants Fuentes and Starr County are **DISMISSED WITH PREJUDICE**.

---

[396] Dkt. No. 134 at 8, ¶ 13.
[397] *See id.* ¶¶ 15–16, 20, 37.
[398] *Id.* at 17, ¶¶ 38–39 (citing *M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 254–55 (5th Cir. 2018)).
[399] *M.D.*, 907 F.3d at 255.
[400] *See supra* notes 340, 394–395 and accompanying text.
[401] *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001)).
[402] Dkt. No. 130.
[403] Dkt. No. 131.
[404] Dkt. No. 144.

>            iv.  *Claim for Violation of Americans with Disabilities Act and the Rehabilitation
>                 Act Against the County of Starr, Texas*

Plaintiffs' sixth cause of action is brought under the Americans with Disabilities Act[405] and the Rehabilitation Act[406] against Starr County.[407] Having reviewed Starr County's motion to dismiss,[408] the Court agrees with Plaintiffs that "Starr County does not specifically contest [Plaintiffs'] claims arising under the Rehabilitation Act (RA) and the Americans with Disability [sic] Act (ADA)."[409] Starr County also does not appear to dispute Plaintiffs' motion for leave to file a Third Amended Complaint to the extent Plaintiffs attempt to allege a claim under the Americans with Disabilities Act or the Rehabilitation Act.[410] Accordingly, the Court does not interpret Defendant Starr County to oppose Plaintiffs' motion to amend on the grounds of futility.

>            2.  *Whether the Proposed Amended Complaint is Filed with Undue Delay*

All of Plaintiffs' claims are dismissed with prejudice save for Plaintiffs' sixth cause of action under the Americans with Disabilities Act and the Rehabilitation Act against Starr County. The Court now turns to the other factors regarding whether the Court should permit leave to amend under Federal Rule of Civil Procedure 15, beginning with undue delay.[411]

The Fifth Circuit held that "[l]iberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time. Accordingly, we have indicated that, in exercising its discretion to deny leave to amend a complaint, a trial court may properly consider (1) an unexplained delay following an original complaint, and (2) whether the facts underlying

---

[405] 42 U.S.C. § 12132.
[406] 29 U.S.C. § 701.
[407] *See* Dkt. No. 144-1 at 33–34, ¶¶ 203–213.
[408] Dkt. No. 134.
[409] Dkt. No. 134 at 23, ¶ 56.
[410] *See* Dkt. No. 149.
[411] *See supra* note 61.

the amended complaint were known to the party when the original complaint was filed."[412] However, the delay must be *undue* in the sense that "it must prejudice the nonmoving party or impose unwarranted burdens on the court."[413] Although Defendants are correct that Plaintiffs delayed for one and a half years before filing their first complaint and likely had access to all relevant factual reports long before seeking the two amendments previously granted,[414] Defendants have not established why the delay is undue or will impose prejudice. The Court agrees with Plaintiffs that, because the motion to amend was filed before any discovery commenced and before the Court ruled on any motions to dismiss, the motion does not cause "undue delay."[415] Accordingly, this factor weighs in favor of permitting leave to amend.

### 3.  Whether the Proposed Amended Complaint is Filed with Bad Faith or Dilatory Motive

Defendants argue only that Plaintiffs' motion to amend is filed with a dilatory purpose or is marked by procrastination.[416] Defendants offer no facts or legal authority to support their position. The Court holds that Defendants have failed to establish any dilatory motive or bad faith on the part of Plaintiffs, such as "tactical maneuvers to force the court to consider various theories seriatim" after the Court dismissed a previous theory.[417] Accordingly, this factor weighs in favor of permitting leave to amend.

### 4.  Whether Plaintiffs have Repeatedly Failed to Cure Deficiencies by Previous Amendments

Defendants argue that, where Plaintiffs have already filed an original complaint and two amended complaints, yet another attempt to amend demonstrated repeated failures.[418] Plaintiffs

---

[412] *In re Southmark Corp.*, 88 F.3d 311, 315–16 (5th Cir. 1996) (quotations and footnotes omitted).
[413] *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004).
[414] *See* Dkt. No. 149 at 3.
[415] Dkt. No. 152 at 1–3, ¶¶ 3–5.
[416] Dkt. No. 149 at 5.
[417] *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 599 (5th Cir. 1981).
[418] Dkt. No. 149 at 5–6 (citing *United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 725 (5th Cir. 2008)).

attempt to distinguish Defendants' cited case by characterizing it as faulting the plaintiff for failing to seek leave to amend prior to dismissal, but the Fifth Circuit described that ground as a mere addition to its larger holding that, where the plaintiff had filed three complaints each alleging the same types of claims, the plaintiff had already had ample opportunity and need not be granted further leave.[419] Furthermore, Plaintiffs admit that many of the underlying facts and reports were already available at the time of Plaintiffs' original complaint and earlier amendments.[420] Accordingly, this factor weighs against permitting leave to amend.

### 5. *Whether the Proposed Amended Complaint Will Impose Undue Prejudice to Defendants*

Defendants argue that they will prejudiced by a grant of Plaintiffs' leave to amend because they have already filed dispositive motions to dismiss and will incur additional attorneys' fees by briefing the issues again.[421] However, the Court has ruled on the motions to dismiss. Granting leave to amend will not require any Defendant "to reopen discovery and prepare a defense for a claim different from the [one] ... that was before the court."[422] Accordingly, this factor weighs in favor of permitting leave to amend.

Having examined all factors relevant to Plaintiffs' motion for leave to file their Third Amended Complaint,[423] the Court finds that amendment should be permitted except to the extent delimited above. Accordingly, the Court **GRANTS** Plaintiffs' motion to amend their Americans with Disabilities Act and the Rehabilitation Act claims against Starr County.[424] Leave to amend is **DENIED** to the extent Plaintiffs would attempt to allege any claims against the United States under the Federal Tort Claims Act or against United States Customs and Border Protection

---

[419] *See Dizney*, 295 F. App'x at 725.
[420] *See* Dkt. No. 152 at 4, ¶ 9.
[421] Dkt. No. 149 at 6–7 (citing *Dueling v. Devon Energy Corp.*, 623 F. App'x 127, 130 (5th Cir. 2015)).
[422] *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (alteration and ellipsis in original) (quotation omitted).
[423] Dkt. No. 144.
[424] *Id.*

agents under the *Bivens* doctrine or against Defendants Alex Garcia, Crecencio Galvan, Evelario Garza, Clyde Guerra, Hector Lopez, Sammy Marroquin, Raul Garcia, Sheriff Rene "Orta" Fuentes, or Starr County under 42 U.S.C. § 1983. This holding resolves all of the motions to dismiss and Plaintiffs' motion to amend.

## IV. MOTION TO STAY DISCOVERY

The Court now considers the "Opposed Motion to Stay Discovery and Disclosure" filed by State Defendants Hector Lopez, Evelario Garza, Crecencio Galvan, Clyde Guerra, Alex Garcia, Sheriff Rene "Orta" Fuentes, and Starr County.[425] The State Defendants invoke Fifth Circuit precedent that discovery should not be allowed until the Court's resolution of the qualified immunity defense.[426] The "*Bivens* defendants," Alvaro A. Guajardo-Martinez, Christopher R. Garza, Abram Lerma, and Jorge Flores, also oppose discovery.[427] In response, Plaintiffs assert that "[w]hile Fifth Circuit precedent requires that general discovery be stayed until the question of qualified immunity is resolved, Plaintiffs have alleged facts that, if true, overcome the defense of qualified immunity. Therefore, Plaintiffs seek limited discovery on the issue of whether the defense applies."[428]

As elaborated in Section III.b.1.iii above,[429] the Court has made its ruling on the applicable qualified immunity defense and does not need further factual development. The Court holds that Plaintiffs have not pled allegations that would overcome the defense of qualified immunity. Furthermore, the Court has dismissed with prejudice all claims against CBP agents, Starr County jailers, and the Starr County policymaker and Starr County itself. Accordingly,

---

[425] Dkt. No. 132.

[426] Dkt. No. 132 at 2 (citing *Elliott v. Perez*, 751 F.2d 1472, 1478 (5th Cir. 1985), *abrogated on other grounds by Leatherman v. Tarrant Cty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993)).

[427] Dkt. No. 139.

[428] Dkt. No. 135 at 1.

[429] *See supra* notes 312–321 and accompanying text.

Plaintiffs do not need discovery to analyze the qualified immunity defense. The motion to stay discovery and disclosure[430] is **DENIED AS MOOT**.

## V. CONCLUSION AND HOLDING

For the reasons elaborated above, the Court **GRANTS t**he United States' motion to dismiss,[431] the individual CBP agents' motion to dismiss,[432] the individual State Defendants' motions to dismiss,[433] Defendant Sheriff Fuentes's motion to dismiss,[434] and Starr County's motion to dismiss.[435] Plaintiffs' first, second, and third causes of action under the Federal Tort Claims Act; Plaintiffs' fourth cause of action under the *Bivens* doctrine; and Plaintiffs' fifth cause of action under 42 U.S.C. § 1983 are all **DISMISSED WITH PREJUDICE**. The motion to stay discovery[436] is **DENIED AS MOOT**. Plaintiffs' motion for leave to amend[437] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' only remaining claim is their claim under the Americans with Disabilities Act and the Rehabilitation Act against the County of Starr, Texas. Plaintiffs are **GRANTED** leave to amend to plead only that claim. The Clerk of the Court is instructed to terminate all Defendants except for Starr County. Plaintiffs are **ORDERED** to file an amended complaint consistent with this opinion and order, or otherwise advise the Court as to how progress will be made in this case, no later than **July 17, 2020**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 30th day of June 2020.

_____
Micaela Alvarez
United States District Judge

---

[430] Dkt. No. 132.
[431] Dkt. No. 99.
[432] Dkt. No. 124.
[433] Dkt. Nos. 125, 126, 127, 128, 129, 142, and 143.
[434] Dkt. No. 130.
[435] Dkt. No. 131.
[436] Dkt. No. 132.
[437] Dkt. No. 144.