United States District Court
Southern District of Texas
**ENTERED**
September 11, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ORLANDA DEL CARMEN PEÑA ARITA, individually and as next friend of D.M.A. and C.M.A. and as representative of the ESTATE OF MARCO ANTONIO MUÑOZ, | § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 7:19-cv-00288 |
| VS. | § § | |
| COUNTY OF STARR, TEXAS, | § § | |
| Defendant. | § § | |

## OPINION AND ORDER

The Court now considers "Defendant Starr County, Texas' Motion to Dismiss"[1] and Plaintiffs' response in opposition.[2] Defendant filed an untimely[3] reply brief eight days after Plaintiffs' response without seeking leave of Court or obtaining Plaintiffs' consent, so Defendant's reply brief[4] is **STRICKEN** and will not be considered. After considering the motion, record, and relevant authorities, the Court **GRANTS** Defendant's motion and **DISMISSES** this case.

### I. BACKGROUND

This is a civil rights lawsuit arising out of Marco Antonio Muñoz's suicide while jailed in the custody of Defendant County of Starr, Texas on May 13, 2018.[5] This case's full background

---

[1] Dkt. No. 162.
[2] Dkt. No. 164.
[3] *See* LR7.4.E (emphasis added) ("Unless otherwise directed by the presiding judge, a party who has filed an opposed motion may file a brief *within 7 days* from the date the response is filed.").
[4] Dkt. No. 168.
[5] *See* Dkt. No. 159 at 15, ¶ 82.

is described in the Court's earlier order.[6] As relevant here, United States Customs and Border Patrol agents picked up Marco Antonio Muñoz shortly after he crossed the international border near Granjeno, Texas on May 11, 2018, and transferred him to the custody of Starr County on May 12th. After Mr. Muñoz displayed erratic behavior such as accusing jailers of plotting to kill him and ripping up booking documents, Starr County employees placed him in a padded cell. In that cell, Mr. Muñoz tied his sweater to a floor grate and suffocated himself with the makeshift noose. Plaintiffs initiated this case on August 18, 2019, bringing multiple claims.[7]

In a lengthy opinion on June 30, 2020, the Court considered 29 litigant briefs and supplemental filings and dismissed every one of Plaintiffs' claims except for the violation of the Americans with Disabilities Act and Rehabilitation Act claim against Starr County.[8] The Court ordered Plaintiffs to amend their complaint.[9] Plaintiffs timely complied, and the Third Amended Complaint is the live pleading.[10] In response to the amended complaint, the last remaining Defendant, Starr County, moved to dismiss.[11] The motion is ripe for consideration.

## II. DISCUSSION

### a. Legal Standard

The Court uses federal pleading standards to determine the sufficiency of a complaint.[12] Under Federal Rule of Civil Procedure 12(b)(6), to avoid dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[13] The Court reads the complaint as a whole[14] and accepts all well-pleaded facts as true

---

[6] Dkt. No. 158 at 3–5.
[7] *See* Dkt. No. 1.
[8] Dkt. No. 158.
[9] *Id.* at 63.
[10] *See* Dkt. No. 159.
[11] Dkt. No. 162.
[12] *See Genella v. Renaissance Media*, 115 F. App'x 650, 652–53 (5th Cir. 2004) (holding that pleadings must conform to federal pleading requirements).
[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

(even if doubtful or suspect[15]) and views those facts in the light most favorable to the plaintiff (because a Rule 12(b)(6) motion is viewed with disfavor[16]), but will not strain to find inferences favorable to the plaintiff,[17] but also will not indulge competing reasonable inferences that favor the Defendant.[18] A plaintiff need not plead evidence[19] or even detailed factual allegations, especially when certain information is peculiarly within the defendant's possession,[20] but must plead more than "'naked assertion[s] devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to survive a motion to dismiss.[21]

In evaluating a motion to dismiss, Courts first disregard any conclusory allegations or legal conclusions[22] as not entitled to the assumption of truth,[23] and then undertake the "context-specific" task, drawing on judicial experience and common sense, of determining whether the remaining well-pled allegations give rise to entitlement to relief.[24] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[14] *See Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 506 (5th Cir. 2011) ("While the allegations in this complaint that the Golf Association's anticompetitive acts 'substantially affected interstate commerce' are not sufficient on their own, the complaint here read as a whole goes beyond the allegations rejected in *Twombly* and *Iqbal*.").

[15] *Twombly*, 550 U.S. at 555–56.

[16] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) ("This court construes facts in the light most favorable to the nonmoving party, 'as a motion to dismiss under 12(b)(6) "is viewed with disfavor and is rarely granted."'").

[17] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[18] *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009).

[19] *Copeland v. State Farm Ins. Co.*, 657 F. App'x 237, 240–41 (5th Cir. 2016).

[20] *See Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (holding that pleading "on information and belief" is acceptable when the inference of culpability is plausible).

[21] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also id.* at 679 (holding that a complaint that "do[es] not permit the court to infer more than the mere possibility of misconduct" does not suffice to state a claim).

[22] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quotation omitted) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

[23] *Mustapha v. HSBC Bank USA, NA*, No. 4:11-CV-0428, 2011 WL 5509464, at *2 (S.D. Tex. Nov. 10, 2011) (Hanks, J.) ("[A] court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

[24] *Iqbal*, 556 U.S. at 678–79; *see also Fernandez-Montez v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

inference that the defendant is liable for the misconduct alleged."[25] Courts have "jettisoned the [earlier] minimum notice pleading requirement"[26] and the complaint must plead facts that "nudge" the claims "across the line from conceivable to plausible,"[27] because discovery is not a license to fish for a colorable claim.[28] The complaint must plead every material point necessary to sustain recovery; dismissal is proper if the complaint lacks a requisite allegation.[29] However, the standard is only "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[30]

The Court is limited to assessing only the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the Court may take judicial notice.[31] Attachments to the complaint become part of the pleadings for all purposes,[32] but the Court is not required to accept any characterization of them because the exhibit controls over contradictory assertions,[33] except in the case of affidavits.[34] Because the focus is on the pleadings, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56,"[35] but not if the material is a matter of public record[36] or if a defendant

---

[25] *Iqbal*, 556 U.S. at 678.

[26] *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009).

[27] *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

[28] *Barnes v. Tumlinson*, 597 F. App'x 798, 799 (5th Cir. 2015); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

[29] *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006); *accord Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

[30] *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))

[31] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[32] *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing FED. R. CIV. P. 10(c)).

[33] *Kamps v. Baylor Univ.*, 592 F. App'x 282, 284 n.1 (5th Cir. 2014)

[34] *Bosarge v. Miss. Bureau of Narc.*, 796 F.3d 435, 440–41 (5th Cir. 2015) ("[W]hile the affidavits may be considered as an aid to evaluating the pleadings, they should not control to the extent that they conflict with [plaintiff's] allegations.").

[35] FED. R. CIV. P. 12(d).

[36] *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 n.2 (5th Cir. 2012) (per curiam) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)).

attaches documents to a motion to dismiss that are "referred to in the plaintiff's complaint and are central to her claim."[37]

### b. Analysis

Defendant argues that Plaintiffs' claim should be dismissed because Plaintiffs do not establish that Mr. Muñoz had a disability, that he was discriminated against because of his alleged disability, that he showed a clear need for disability accommodation, or that alleged discrimination caused Mr. Muñoz to commit suicide.[38] Plaintiffs argue their allegations are sufficient.[39]

"Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, like § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), provides that individuals with disabilities shall not 'be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'"[40] "The RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts."[41] Jurisprudence interpreting either the ADA or RA is applicable to both.[42]

> A plaintiff must first establish a prima facie case of discrimination before relief under the ADA [or RA] can be considered. To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.[43]

---

[37] *Causey v. Sewell Cadillac–Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004).
[38] Dkt. No. 162, at 9–10 ¶ 13.
[39] Dkt. No. 164 at 14, ¶ 17.
[40] *Frame v. City of Arlington*, 657 F.3d 215, 220–21 (5th Cir. 2011) (en banc).
[41] *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).
[42] *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002).
[43] *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004); *accord Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

"In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals. For this type of claim, a plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because the nature of the limitation was open and obvious."[44] To recover damages, Plaintiffs must show intentional discrimination.[45] "The Supreme Court has held that prisons are public entities that may not exclude disabled individuals from participation in or deny them the benefits of their services, programs, or activities."[46] The Court now turns to evaluating the various legal standards against Plaintiff's allegations.

### 1. Whether Plaintiffs Show that Mr. Muñoz was a Qualified Individual

Plaintiffs allege "Mr. Muñoz had two qualifying disabilities under the ADA and RA: (1) a trauma-related mental disability and (2) suicidal behavior disorder."[47] Defendant argues that Mr. Muñoz lacked any "particular mental illness that also substantially limited a major life activity" and is not a qualified individual under the ADA.[48] Plaintiffs respond that the definition of a disability is broad and Plaintiffs have adequately pled Mr. Muñoz qualifying disability and status.[49] Obviously, whether Mr. Muñoz had a qualifying disability is a threshold issue.

As relevant here, "[t]he term 'disability' means, with respect to an individual, a physical or mental impairment that substantially limits one or more major life activities of such individual"[50] and the term also means being regarded as having a disability "if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of

---

[44] *Cadena v. El Paso Cty.*, 946 F.3d 717, 723–24 (5th Cir. 2020)
[45] *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002).
[46] *Cadena.*, 946 F.3d at 723 (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)).
[47] Dkt. No. 159 at 19, ¶ 112.
[48] Dkt. No. 162 at 10–15, ¶¶ 14–24.
[49] Dkt. No. 164 at 14–19, ¶¶ 18–29.
[50] 42 U.S.C. § 12102(1)(A) (Americans with Disabilities Act); *accord* 29 U.S.C. § 705(9)(B) (Rehabilitation Act).

an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," unless the impairment has an actual or expected duration of 6 months or less.[51] "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."[52] Defendant Starr County's jail wherein Mr. Muñoz committed suicide counts as a public entity.[53]

"ADA regulations generally require an individualized determination of disability based on whether the condition 'substantially limits an individual in a major life activity," that is, categorical exclusions do not necessarily exist in the ADA term "disability."[54] The definition of "disability" is broad and accommodating—an impairment that "substantially limits" a major life activity need only reduce the disabled person's ability to perform a major life activity as compared to the general population.[55] "[T]he threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis,"[56] and does not call for medical, scientific, or expert proof.[57]

---

[51] 42 U.S.C. § 12102(1)(C), (3).

[52] 42 U.S.C. § 12131(2).

[53] *See* 42 U.S.C. § 12131(1); *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998) ("[T]he [ADA's] language unmistakably includes State prisons and prisoners within its coverage.").

[54] *Garrett v. Thaler*, 560 F. App'x 375, 383 (5th Cir. 2014); *see* 29 C.F.R. pt. 1630 app. ("Section 1630.2(j)(1)(iv) Individualized Assessment Required, But With Lower Standard Than Previously Applied.").

[55] *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590–91 (5th Cir. 2016); *accord Williams v. Tarrant Cty. Coll. Dist.*, 717 F. App'x 440, 446–47 (5th Cir. 2018).

[56] 29 C.F.R. § 1630.2(j)(1)(iii).

[57] *Williams*, 717 F. App'x at 446–47 (quoting 29 C.F.R. § 1630.2(j)(1)(v)).

The first question is whether a mental condition manifested by erratic behavior, or suicidal ideation, suicidal tendencies, or a suicidal behavior disorder,[58] can constitute a disability under the ADA. Defendant argues it cannot.[59] Courts have reached differing conclusions on this question.[60] This Court holds that a mental impairment of which erratic behavior and attempted or completed suicide is a symptom can constitute a disability under the ADA and Rehabilitation Act. This holding is consistent with the text of the ADA. A qualifying disability is any "mental impairment that substantially limits one or more major life activities of such individual."[61] A disability is substantially limiting if it impedes an individual's ability to care for themselves or impairs the individual's neurological or brain functioning.[62] Thus, a mental or behavioral disorder manifesting in erratic behavior including attempted suicide or suicidal tendencies substantially impairs the ability to care for oneself and indicates an impairment to normal or healthy brain functioning.[63] If there were any lingering doubt, the statute resolves it in favor of broad coverage under the ADA.[64] Furthermore, the ADA directs courts to look to implementing regulations,[65] and the applicable regulations direct broad coverage and instruct that "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis" because the central question is whether discrimination has

---

[58] Plaintiffs term Mr. Muñoz's condition a "trauma-related mental disability" and a "suicidal behavior disorder." Dkt. No. 159 at 19, ¶ 112.

[59] *See* Dkt. No. 162 at 14, ¶¶ 20–21.

[60] *Compare Wade v. Montgomery Cty.*, No. 4:17-CV-1040, 2017 WL 7058237, at *6 (S.D. Tex. Dec. 6, 2017) (Milloy, J.) ("[A]llegations of suicidal risk are not sufficient, without more, to show that an impairment is disabling."), *with Williamson v. Larpenter*, No. CV 19-254, 2019 WL 3719761, at *13 (E.D. La. July 15, 2019) (quotation omitted) ("Depression and other mental illnesses can qualify as disabilities for purposes of the ADA."), *and McCollum v. Livingston*, No. 4:14-cv-3253, 2017 WL 608665, at *34 (S.D. Tex. Feb. 3, 2017) (Ellison, J.) (holding that a depressive disorder that "blunted" survival instincts qualified as a disability under the ADA).

[61] 42 U.S.C. § 12102(1)(A).

[62] *Id.* § 12102(2).

[63] *See* 29 C.F.R. § 1630.2(j)(1)(ii) ("An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.").

[64] *See id.* § 12102(4)(A)–(B) (the ADA shall be interpreted in favor of broad coverage).

[65] 42 U.S.C. § 12205a.

occurred.[66] Lastly, this holding is consistent with the Second and Sixth Circuits. The Second Circuit held "[a] mental illness that impels one to suicide can be viewed as a paradigmatic instance of inability to care for oneself. It therefore constitutes a protected disability under the Rehabilitation Act."[67] The Sixth Circuit agreed that a mental impairment "of which . . . attempted suicide was a symptom . . . would 'substantially limit' [a person] in the major life functions of caring for one's self, making reasonable decisions, and exercising sound thought and judgment."[68] Accordingly, the Court holds that Plaintiffs have sufficiently alleged a qualifying disability.

Having found that a mental impairment which manifests in attempted or completed suicide may constitute a disability under the ADA and Rehabilitation Act, the Court must now determine whether Plaintiffs' allegations are sufficient to show that Mr. Muñoz was disabled by such mental health disorder or impairment. Plaintiffs allege that:

> Mr. Muñoz's trauma-related impairment was evinced by statements and actions that showed intense psychological disturbances: delusions that the government had killed his family; paranoia that the government would kill him; disorganized speech and behavior; altered sense of reality; inability to remember basic information such as his address; violent outbursts; self-injury; hypervigilance; problems with concentration; and exaggerated startled response.[69]

Defendant argues that Plaintiffs lack "the training and experience to offer a retroactive diagnosis based on scant information available."[70] Defendant further argues that all of Plaintiffs' allegations of disordered behaviors "first appeared at the federal detention center" and that his paranoid or delusional behaviors, such as saying that law enforcement killed his family and were

---

[66] 29 C.F.R. § 1630.2(j)(1)(i)–(iii).
[67] *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 168 (2d Cir. 2003).
[68] *Chandler v. Specialty Tires of Am. (Tenn.), Inc.*, 134 F. App'x 921, 925–26 (6th Cir. 2005).
[69] Dkt. No. 159 at 19, ¶ 113.
[70] Dkt. No. 162 at 10, ¶ 15.

going to kill him, does not establish his qualifying disability.[71] In response, Plaintiffs point to numerous specific allegations which they argue evince Mr. Muñoz's qualifying disability.[72]

Without the aid of expert evidence, the Court cannot say definitively whether Mr. Muñoz suffered from a mental impairment, disability, or disorder. At this stage, the Court's role is to interpret Plaintiffs' complaint as a whole and grant Plaintiffs every reasonable inference to determine whether Plaintiffs state a plausible claim for relief.[73] The Court finds Plaintiffs' allegations plausibly allege that Mr. Muñoz suffered from a disability. Plaintiffs allege that:

> Mr. Muñoz [continually showed] disorganized, self-injurious behavior and repeatedly express[ed] his paranoia and delusions that federal agents had murdered his family and that he was next. He mumbled incoherently to himself. Although he was literate, he could write nothing beyond indecipherable scribbles and the letter X. He could not provide the home address where he had lived for years.[74]

He engaged in other erratic behavior like striking a window and ripping up documents.[75] One jailer observed that Mr. Muñoz "was not thinking straight."[76] Read together, these allegations sufficiently allege that Mr. Muñoz suffered from a qualifying mental disability, particularly given the inclusiveness that is meant to be accorded to that term and brevity which the Court should give this question.[77]

### 2. Whether Plaintiffs Allege that Defendant Discriminated Against Mr. Muñoz by Reason of his Disability

Defendant moves to dismiss on the grounds that Plaintiffs allegations do not identify any specific act of discrimination or a failure to provide medical care because of Mr. Muñoz's

---

[71] *Id.* ¶¶ 19, 22.
[72] Dkt. No. 164 at 18–19, ¶¶ 28–29.
[73] *See supra* notes 13–18.
[74] Dkt. No. 159 at 2, ¶ 3; *accord id.* at 11, ¶¶ 57, 61.
[75] *See id.* at 11, ¶¶ 57–61.
[76] *Id.* at 10, ¶ 53.
[77] *See* 29 C.F.R. § 1630.2(j)(1).

alleged disability.[78] Plaintiffs respond that Defendant has no explanation other than disability discrimination for its employees' alleged actions.[79]

Plaintiffs must show that Mr. Muñoz was "being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or . . . otherwise being discriminated against by the public entity [and] that such exclusion, denial of benefits, or discrimination is by reason of his disability."[80] Under the Rehabilitation Act, Plaintiffs must "establish that disability discrimination was the sole reason for the exclusion or denial of benefits[,] [w]hile under Title II of the ADA, 'discrimination need not be the sole reason.'"[81]

Plaintiffs first argue that "Defendant failed to provide effective accommodations for [Mr. Muñoz's] disabilities. That failure deprived Mr. Muñoz of his rights to safe conditions of confinement and medical care." Therefore, Defendant failed in its affirmative obligation to accommodate Mr. Muñoz's disabilities.[82] However, Plaintiffs' argument conflates a "disability-discrimination" claim, with "a failure-to-accommodate claim,"[83] which the Court will analyze later.[84] Plaintiffs "can prove their [ADA] Title II claim by showing *either* that [Mr. Muñoz] was excluded from participating in some benefit at the [Starr County] Jail *or* that [he] was otherwise subjected to discrimination by the Jail."[85] With respect to the disability-discrimination claim discussed in this subsection, Plaintiffs' argument of an alleged failure to accommodate has no relevance.

---

[78] Dkt. No. 162 at 16–17, ¶¶ 26–27.
[79] Dkt. No. 164 at 25–26, ¶¶ 48–49.
[80] *Cadena v. El Paso Cty.*, 946 F.3d 717, 723 (5th Cir. 2020).
[81] *Wilson v. City of Southlake*, 936 F.3d 326, 330 (5th Cir. 2019) (quoting *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)).
[82] Dkt. No. 164 at 26, ¶ 49.
[83] *See Smith v. Harris Cty.*, 956 F.3d 311, 318 (5th Cir. 2020).
[84] *See infra* Section II.b.3.
[85] *Lee v. Valdez*, No. CIV.A.3:07-CV-1298-D, 2009 WL 1406244, at *12 (N.D. Tex. May 20, 2009).

Plaintiffs' only remaining argument, then, is "[t]here is no indication that Defendant discriminated against Mr. Muñoz for some reason *other* than his disabilities."[86] But this argument is circular: Defendant discriminated against Mr. Muñoz because of his disabilities because Defendant did not discriminate against Mr. Muñoz for any reason other than his disabilities. The Court is unpersuaded. The Court agrees with Defendant that "there are no facts alleged from which the Court could infer that either the cell assignment or the failure to provide medical care were because of a disability."[87] Plaintiffs' allegation that jailers put Mr. Muñoz into a padded cell[88] does not demonstrate an act of discrimination. Plaintiffs' attached exhibit reveals that jailers put Mr. Muñoz into a padded cell after "Deputy Galvan and Munoz were on the floor and . . . Munoz was resisting Deputy Galvan."[89] There are no facts alleged that Starr County jailers placed Mr. Muñoz in the padded cell because Mr. Muñoz was "acting suicidal."[90] Plaintiffs also do not allege in a nonconclusory fashion that Defendant jailers' failure to provide medical care was due to Mr. Muñoz's mental state. Plaintiffs allege that jailers forced Mr. Muñoz into a padded cell and neglected him there,[91] but do not allege that jailers did so *by reason of* Mr. Muñoz's mental disability.[92] The Court holds that Plaintiffs' allegations fail to state a claim for disability discrimination.

### 3. *Whether Plaintiffs show that Mr. Muñoz was Denied Reasonable Accommodations*

The parties additionally disagree whether Plaintiffs state a claim that Defendant failed to accommodate Mr. Muñoz. Defendant argues that Plaintiffs cannot make out a failure-to-

---

[86] Dkt. No. 164 at 25, ¶ 48.
[87] Dkt. No. 162 at 16, ¶ 26.
[88] *See* Dkt. No. 159 at 21, ¶ 122 ("Starr County jailers' treatment of Mr. Muñoz—their decision to place him in a dangerous cell and neglect him, rather than provide him necessary medical care or at the very least adequate observation—constituted intentional discrimination under the ADA and the RA.").
[89] Dkt. No. 159-1 at 25, ¶¶ 8.31, 8.33; *accord id.* at 32, ¶¶ 12.16–12.17.
[90] *See id.*
[91] Dkt. No. 159 at 12, ¶¶ 62–65.
[92] *See Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

accommodate claim because Plaintiffs fail to allege a known or otherwise obvious need for accommodation that Defendant failed to accommodate for.[93] Plaintiffs respond that they have sufficiently shown that "Mr. Muñoz's disabilities, resulting limitations, and necessary accommodations were open, obvious, and apparent."[94]

> In addition to prohibiting discrimination, the ADA and the Rehabilitation Act . . . impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals. . . . To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations.[95]

"For this type of claim, a plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because the nature of the limitation was open and obvious."[96] "[T]he ADA requires [public entities] to reasonably accommodate limitations, not disabilities."[97] Accordingly, a person need not say "I suffer from a disability—mental illness—and request an accommodation" to be entitled to appropriate accommodation.[98] However, neither do "the accommodation provisions of the ADA and RA . . . require public entities to 'guess' an individual's need for an accommodation."[99] Mental disabilities are ordinarily discreet and rarely open and obvious, so "a disabled [plaintiff] cannot remain silent and expect [the defendant] to bear the initial burden of identifying the need

---

[93] Dkt. No. 162 at 18, ¶ 30.

[94] Dkt. No. 164 at 19, ¶ 30.

[95] *Smith v. Harris Cty.*, 956 F.3d 311, 317 (5th Cir. 2020) (quotations omitted).

[96] *Cadena v. El Paso Cty.*, 946 F.3d 717, 724 (5th Cir. 2020).

[97] *Windham v. Harris Cty.*, 875 F.3d 229, 236 (5th Cir. 2017) (second alteration in original) (quoting *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 164 (5th Cir. 1996)).

[98] *White v. Watson*, No. 16-CV-560-JPG-DGW, 2018 WL 2047934, at *14 (S.D. Ill. May 2, 2018); *see Cadena*, 946 F.3d at 724 ("[T]his court has affirmed a finding of intentional discrimination when a county deputy knew that a hearing-impaired suspect could not understand him, rendering his chosen method of communication ineffective, and the deputy made no attempt to adapt.").

[99] *McCoy v. Tex. Dep't of Criminal Justice*, No. C.A.C 05 370, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006) (Jack, J.) (collecting cases).

for, and suggesting, an appropriate accommodation" in most cases.[100] In short, the mental illness must be open and obvious without guesswork.

Defendant points out that "Mr. Munoz had no history of mental illness or suicide attempts and specifically denied being suicidal during the book-in process, so there clearly was no reason for the jailers to conclude it was wrong to put him in that cell or to allow him to keep his clothes."[101] Plaintiffs point to allegations evincing what this Court previously called "bizarre and clearly troubled" behavior.[102] Specifically, Mr. Muñoz said that Starr County jailers killed his family and were going to kill him, he drew an *X* on and ripped up booking documents, he mumbled or spoke incoherently, and he could not remember basic information like his home address.[103] When Mr. Muñoz arrived at the Starr County Jail, "CBP agents warned . . . that Mr. Muñoz had suffered a seizure and a panic attack" and one jailer understood that Mr. Muñoz was acting aggressively and not thinking straight.[104] Jailers who worked the night shift of May 12, 2018, informed the morning shift May 13th jailers "about the signs and symptoms of Mr. Muñoz's disability, including his self-injurious and delusional behavior," and a supervisor reviewed a report for why Mr. Muñoz had been placed in a solitary padded cell.[105]

The Court holds that Plaintiffs' allegations do not "sho[w] that the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents."[106] The Court finds *Windham v. Harris County* particularly instructive. In that case, the plaintiff suffered from cervical stenosis and could not extend his neck or look

---

[100] *Taylor*, 93 F.3d 165.
[101] Dkt. No. 162 at 18, ¶ 30.
[102] *Peña Arita v. United States*, No. 7:19-cv-00288, 2020 WL 3542256, at *18 (S.D. Tex. June 30, 2020) (Alvarez, J.).
[103] Dkt. No. 159 at 11–12, ¶¶ 55–64, *cited in* Dkt. No. 164 at 21, ¶ 33.
[104] Dkt. No. 159 at 10, ¶¶ 51–53.
[105] *Id.* at 13, ¶ 70.
[106] *Windham v. Harris Cty.*, 875 F.3d 229, 237 (5th Cir. 2017) (internal quotation marks omitted).

straight ahead without injury.[107] After a car crash, responding officers arrived at the scene and wanted to administer a field sobriety test to the plaintiff.[108] One officer administered a gaze nystagmus test, which "involves waiving a stimulus in front of the subject's face and tracking his eye movements" to detect intoxication.[109] Before and during the test, the plaintiff complained that his neck hurt, but "never indicated that he could not complete the test or asked [the officer] to stop. He also never asked [officer] to administer the test differently or to use another test instead."[110] After the field sobriety test, the plaintiff was not arrested but he later sued for injury. No party disputed that a reasonable jury could find that the plaintiff suffered injury as a result of the gaze nystagmus test, but this Court still awarded summary judgment to the defendants.[111] On appeal, the Fifth Circuit affirmed summary judgment for the defendants, holding that "a jury could find that the officers knew or should have known [the plaintiff] suffered from a neck-related disability. But knowledge of a disability is different from knowledge of the resulting limitation. And it certainly is different from knowledge of the necessary accommodation. To prevail, [the plaintiff] must adduce evidence that all three were or should have been obvious. He fails to make that showing."[112] Even though the plaintiff complained of his neck at the time and showed the officers a doctor's note describing some limitations, the Fifth Circuit held that the plaintiff never made his limitations obvious and apparent to prevail on an ADA claim.[113] Although the *Windham* case was decided at summary judgment and used more scrutinizing standards, the case stands for the proposition that, when a plaintiff does not specifically request a disability or limitation accommodation, the plaintiff's disability must be emphatically obvious

---

[107] *Windham*, 875 F.3d at 233.
[108] *Id.*
[109] *Id.*
[110] *Id.* at 234.
[111] *Id.*
[112] *Id.* at 238.
[113] *Id.*

and apparent and clearly indicate the limitation and need for accommodation.[114] Such obvious disabilities include "well-understood and outwardly visible disabilities like, say, blindness, deafness, or being wheelchair-bound."[115] As for mental disabilities, in another case decided at the motion to dismiss stage, even though the plaintiff informed the defendant of his specific mental disability diagnosis, the Fifth Circuit found his allegations insufficient because, "when dealing in the amorphous world of mental disability, it will often be impossible for an employer to identify an employee's specific disabilities, limitations, and possible accommodations,"[116] and the ADA does not require guessing or clairvoyance as to a plaintiff's need for accommodation.[117]

The Court finds these precedents controlling in this case. "[T]here is simply nothing in [Plaintiffs'] allegations that would have notified [Defendant] of [Mr. Muñoz's] limitations requiring accommodation."[118] Plaintiffs would have this Court hold that when jailers are exposed to bizarre, erratic, belligerent, or troubled behavior by a detainee, but do not foresee that detainee's plan or intent to commit suicide, they have therefore failed to accommodate for an obvious mental disability. The Court cannot stretch the ADA or Rehabilitation Act this far, and Plaintiffs cite no authority wherein a court has done so, although they point to *Hobart v. City of Stafford*.[119] *Hobart* is not such a case and is distinguishable, because the defendant city in that case was specifically *told* of the plaintiff's need for an officer trained in mental health crisis intervention and told of the plaintiff's need for medication and to go to the hospital.[120] Here, Mr. Muñoz never requested mental health intervention, medication, or hospitalization, and twice

---

[114] *See id.* at 237.
[115] *Id.* at 238.
[116] *Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 216 (5th Cir. 2015) (alteration and internal quotation marks deleted); *see Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165–66 (5th Cir. 1996) (remarking that mental disabilities are discreet and uniquely within the knowledge of the disabled person and their healthcare provider).
[117] *Windham*, 875 F.3d at 236–37.
[118] *Jin Choi*, 633 F. App'x at 216.
[119] Dkt. No. 20–21, ¶ 33.
[120] 784 F. Supp. 2d 732, 758 (S.D. Tex. 2011) (Ellison, J.).

denied that he was suicidal.[121] Plaintiffs never allege that Mr. Muñoz remarked on his disability or requested any accommodation. Plaintiffs also emphasize[122] two Fifth Circuit cases, *Perez v. Doctors Hospital at Renaissance, Ltd.*,[123] and *Delano-Pyle v. Victoria County*,[124] wherein the Fifth Circuit held that defendants' ignorance of "clear indications" of disabilities constituted discrimination under the ADA or Rehabilitation Act, but these cases are also easily distinguishable from this case because they both involved an admittedly obvious disability, specifically deafness, that the defendants ignored in spite of clear communication challenges. The Court holds that *Perez* and *Delano-Pyle* are not controlling in this case; *Windham* is.

Plaintiffs' strongest allegations of "clear indications" of a mental disability are that "Jailer Lopez" observed Mr. Muñoz's self-harming behavior and that unspecified jailers described Mr. Muñoz's "self-injurious and delusional behavior" to other unspecified jailers at the Starr County Jail shift change.[125] The self-injuring behavior Plaintiffs point to, however, is described in Plaintiffs' own exhibit thusly:

> Jailer Lopez said that while he was in the front picket, Munoz struck the detox window one time and that Jailer Lopez spoke to Munoz through the "dukane" system, which is similar to a phone system according to Jailer Lopez. Jailer Lopez said he asked Munoz if he was okay and that Munoz nodded "yes." Jailer Lopez said he advised Munoz that they would continue the booking process in a short time and then Jailer Lopez hung up the phone. Jailer Lopez said he then observed Munoz kneel down facing the wall with his hands in the air and begin praying.[126]

---

[121] Dkt. No. 159-1 at 24, ¶ 8.25 ("Jailer Lopez said that he administered the health and suicide screening questions and that Munoz gave no indication of any health problems or any thoughts of suicide or actions in the past that were suicidal."); *id.* at 31, ¶ 12.12 ("Deputy Galvan said that Jailer Lopez asked Munoz a variety of questions and that Munoz was not thinking about hurting himself.").

[122] Dkt. No. 159 at 23, 25 ¶¶ 40, 45.

[123] 624 F. App'x 180, 185 (5th Cir. 2015).

[124] 302 F.3d 567, 575 (5th Cir. 2002).

[125] Dkt. No. 159, ¶¶ 59, 70.

[126] Dkt. No. 159-1 at 24, ¶ 8.27.

The Court may consider this exhibit over Plaintiffs' exaggerated characterization that "Mr. Muñoz started to harm himself again by striking the window."[127] Plaintiffs also allege that Mr. Muñoz harmed himself in other ways by kicking at walls and windows,[128] but Plaintiffs do not allege that Defendant or its employees were aware of this specific behavior,[129] Plaintiffs' exhibit reveals that this behavior was an attempt at escape, not self-harm,[130] and Plaintiffs strain credulity and common sense by attempting to characterize kicking as self-harming behavior, which this Court cannot indulge upon these allegations.[131] Plaintiffs' other allegations refer to familiar inmate behavior of aggression or belligerence, common in a carceral milieu,[132] which simply do not make a disability, the resulting limitations of that disability, and the necessary reasonable accommodations "open, obvious, and apparent to the" jailers[133] because such behavior could have been indicative of any number of causes, including stress, distrust, and anger. In sum, the Court holds that Plaintiffs' allegations fail to state a claim to ADA or

---

[127] *Compare* Dkt. No. 159 at 11, ¶ 59, *with supra* text accompanying notes 31–33.

[128] *See* Dkt. No. 159, ¶¶ 2, 34, 44, 47, 50.

[129] *See id.* at 10, ¶ 51 (alleging that unspecified "CBP agents" warned unspecified "Starr County jailers" of unspecified "preceding events"). This allegation is conclusory.

[130] Dkt. No. 159-1 at 36, ¶ 15.11 ("Officer Jimenez said that Agent Flores advised Officer Jimenez that Munoz was resisting transport and had attempted to kick out the rear window of his Border Patrol Vehicle."); *id.* at 55, ¶¶ 24.13–.14 ("Agent Montelongo said that the transport Border Patrol Agents were concerned that Munoz was going to kick open the door and escape which is why they had put out a call over the radio for assistance. Agent Montelongo said he asked if Munoz was injured and the transport Border Patrol Agents said no."); *id.* at 57, ¶¶ 26.4, 26.6 ("I discovered that Munoz was at times un-compliant and attempted to escape the processing facility at one point. . . . I discovered that Munoz was being transported to the Starr County Jail due to his behavior at the processing center and that while in route, attempted to kick open the door of a Border Patrol unit and later tried to escape out of the back of the said unit.").

[131] *See supra* note 17.

[132] *See Branton v. City of Moss Point*, 261 F. App'x 659, 661 (5th Cir. 2008) ("People who are violent to others often are not violent to themselves. Therefore, unsurprisingly, courts have not considered a detainee fighting with police officers as evidence that the detainee was suicidal."); *Posey v. Sw. Bell Tel. L.P.*, 430 F. Supp. 2d 616, 623 (N.D. Tex. 2006) ("Anger, hostility, and belligerence are not uncommon displays of conduct by pretrial detainees or other persons held in custody.").

[133] *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996).

Rehabilitation Act relief that is plausible on its face because Plaintiffs do not allege an obvious or apparent mental disability and resulting limitations that Defendant failed to accommodate.[134]

### 4.   Whether Plaintiffs Allege Intentional Discrimination

The parties disagree on whether Plaintiffs allege intentional discrimination under the ADA or Rehabilitation Act.[135] This is important because, "[e]ven when plaintiffs successfully prove a disability-discrimination or a failure-to-accommodate claim, they may only recover compensatory damages upon a showing of intentional discrimination."[136] Plaintiffs here request only damages, attorneys' fees and costs, and any other relief this Court deems proper.[137]

Intentional discrimination under the ADA or Rehabilitation Act "requires that the defendant at least have actual notice of a violation" and "something more than deliberate indifference to show intent."[138] "In the context of a failure-to-accommodate claim, intentional discrimination requires at least actual knowledge that an accommodation is necessary."[139] "Something more than mere negligence must be shown."[140] "[F]acts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under [the Rehabilitation Act, 29 U.S.C. § 794] or ADA."[141] "Intent is usually shown only by inferences. Inferences are for a fact-finder and [a court is] not that."[142]

---

[134] Given this holding, and Plaintiffs' failure to state a claim for disability discrimination, the Court need not evaluate Plaintiffs' arguments regarding proximate cause. *See* Dkt. No. 164 at 26–28, ¶¶ 50–55.

[135] *Compare* Dkt. No. 162 at 21, ¶ 36, *with* Dkt. No. 164 at 23, ¶ 39.

[136] *Smith v. Harris Cty.*, 956 F.3d 311, 318 (5th Cir. 2020) (quotation omitted).

[137] Dkt. No. 159 at 21–22, ¶ 126.

[138] *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 575 (5th Cir. 2018) (quotation omitted).

[139] *Smith*, 956 F.3d at 319.

[140] *Estate of A.R. v. Muzyka*, 543 F. App'x 363, 365 (5th Cir. 2013).

[141] *Id.* (quotation omitted).

[142] *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 184 (5th Cir. 2015) (citing *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (citation omitted) ("We have often recognized the difficulty in proving discrimination by direct evidence. Thus, the strength of the circumstantial evidence supporting the plaintiff's prima facie case and showing the defendant's preferred [sic] reason is false may be enough to create an inference of discrimination.")).

Defendant argues Plaintiffs do not allege the Starr County jailers' actual notice of Mr. Muñoz's mental disability.[143] In response, Plaintiffs argue that the Starr County jailers became aware of Mr. Muñoz's mental disabilities and then intentionally discriminated against him by failing to provide accommodations for his obvious disabilities.[144] Plaintiffs cite two cases wherein federal district courts found intentional discrimination.[145] In the first case, the Texas Department of Criminal Justice, in concert with the University of Texas Medical Department, chose to assign prisoner Larry Gene McCollum to the "Hutchins Unit" in an area without air conditioning in the summer of 2011.[146] This Court acknowledged that the defendant Texas Department and University of Texas were aware of Mr. McCollum's morbid obesity and regular taking of medications that increased his vulnerability to heat-related illnesses, and were aware of a past death resulting from hyperthermia by an individual taking similar medications, but ignored Mr. McCollum's requests to move to a bottom bunk to avoid the exertion of climbing, and failed to provide "wellness checks, access to respite areas, training on extreme temperatures, or cups issued upon arrival."[147] This Court concluded that "[a]s a result of UTMB and TDCJ's actions and inactions, McCollum was left to suffer for days, eventually succumbing to the heat and his medical conditions only seven days after entering Hutchins Unit. A reasonable jury could infer that both agencies intentionally discriminated against McCollum."[148] In the other case, the Northern District of Texas refused to dismiss an ADA and Rehabilitation Act claim in which the TDCJ knew the inmate plaintiff "suffered from severe bipolar disorder and schizophrenia, was classified by TTUHSC doctors as 'high risk suicide status,' and had made serious suicide

---

[143] Dkt. No. 162 at 21, ¶ 36.
[144] Dkt. No. 164 at 24–25, ¶¶ 43–45.
[145] *Id.* at 24, ¶ 43.
[146] *McCollum v. Livingston*, No. 4:14-cv-3253, 2017 WL 608665 (S.D. Tex. Feb. 3, 2017) (Ellison, J.).
[147] *Id.* at *40.
[148] *Id.*

attempts in the past, including cutting his own throat at the Allred Unit requiring 43 sutures in 2010," but the TDCJ nevertheless assigned the inmate to a cell with "dangerous tie-offs."[149] The court held that Plaintiff sufficiently alleged that defendants failed to "reasonably accommodate [the inmate's] mental disability by placing him in a cell appropriate for someone with his well-known history of suicide attempts [and] violated the ADA and Rehabilitation Act resulting in his death."

However, both cases are distinguishable from the instant case because both cases Plaintiffs cite involved definitive evidence or allegations of the defendants' knowledge of the plaintiff's disabilities or limitations. Here, Plaintiffs only allege that:

> Defendant's employees are not laymen, as Defendant argues. They are Texas jailers with some training in mental health awareness and suicide prevention. They were (1) informed of Mr. Muñoz's history of self-destructive and delusional behavior; and (2) able to identify that Mr. Muñoz did not seem "okay" or "right in the head." They were able to identify that Mr. Muñoz needed special housing and regular monitoring. The jailers' actions and statements confirm that Defendant knew that Mr. Muñoz needed accommodations.[150]

The Court disagrees with Plaintiffs' contention. Again, the Court does not find these arguments and allegations sufficient to put Defendant's employees on notice that "'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents."[151] Plaintiffs' allegations of Mr. Muñoz's erratic and distressed behavior, which the Starr County jailers obviously became aware of while Mr. Muñoz was in their custody for less than one full day after stressful events, are a far cry from allegations that defendants were aware of specific, diagnosed medical issues and resulting limitations that they subsequently ignored. Accordingly, the Court holds that Plaintiffs' Third Amended Complaint

---

[149] *Wright v. Tex. Dep't of Criminal Justice*, No. 7:13-CV-0116-O, 2013 WL 6578994, at *1, 4 (N.D. Tex. Dec. 16, 2013).

[150] Dkt. No. 164 at 21, ¶ 34 (citation omitted).

[151] *Windham v. Harris Cty.*, 875 F.3d 229, 237 (5th Cir. 2017) (quoting *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 164 (5th Cir. 1996)); *see supra* text accompanying notes 106–134.

fails to state a claim for intentional discrimination under the ADA or Rehabilitation Act and that no jury could reasonably draw the inference that Defendant is liable for intentional discrimination consistent with Plaintiffs' allegations and exhibits.

### III. CONCLUSION AND HOLDING

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss.[152] Plaintiffs' claim under the Americans with Disabilities Act and Rehabilitation Act is **DISMISSED WITH PREJUDICE**. All of Plaintiff's claims have been dismissed with prejudice.[153] Accordingly, this case will terminate upon entry of the final judgment.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 11th day of September 2020.

_____
Micaela Alvarez
United States District Judge

---

[152] Dkt. No. 162.
[153] *See* Dkt. No. 158.